IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS J. WALNEY and | ) | |
|---|---|---|
| RODNEY A. BEDOW, SR., | ) | |
| *individually and on behalf of all* | ) | |
| *others similarly situated,* | ) | CIVIL ACTION No. 13-102 Erie |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| **SWEPI LP** and **SHELL ENERGY** | ) | |
| **HOLDING GP, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

**CONTI, Chief District Judge**

### I. Introduction

In this class action lawsuit, Thomas J. Walney ("Walney") and Rodney A. Bedow, Sr. ("Bedow," and together with Walney, "plaintiffs") allege that defendants SWEPI LP and its general partner and alleged alter ego, Shell Energy Holding GP, LLC (collectively, "SWEPI") breached certain oil and gas leases by failing to pay bonus monies that were allegedly owed to plaintiffs and similarly situated landowners under the terms of their respective leases. Presently pending before the court is plaintiffs' Motion to Amend Class Definition (ECF No. 93). For the reasons that follow, the motion will be denied.

### II. Background Facts and Procedural History

On or around March 5, 2013, Walney commenced this civil action in the Venango County Court of Common Pleas, asserting claims for breach of contract, fraud, disparagement of title, and promissory estoppel. (Compl. Ex. A, ECF No. 1–1.) The case was subsequently

1

removed to this court (ECF No. 1) and, following various pretrial proceedings, Walney filed the operative Second Amended Complaint (ECF No. 57), which added Bedow as a co-plaintiff and asserted additional claims for breach of implied contract and unjust enrichment.

On January 12, 2015, plaintiffs filed a motion (ECF No. 62) to certify a class consisting of:

> [e]very person who on or after March 14, 2009[3] signed a Pennsylvania oil and gas lease and/or memorandum thereof in favor of and recorded by SWEPI, LP in exchange for the promise of a signing bonus which was never paid.

(Pl.'s Br. Supp. Mot. Class Cert. at 3, ECF NO. 63.)

SWEPI opposed class certification partly on the ground that the proposed class, as defined by plaintiffs, was not readily ascertainable. (*See* Defs.' Resp. Opp. to Pls.' Mot. Class Cert. at 37-40, ECF No. 68.) The alleged confusion pertained to the concept of class members who had received the "promise of a signing bonus which was never paid." (*Id.*) SWEPI argued, that, "[e]ven if the 'promise' were redefined as the 'bank drafts'..., determining what is meant by 'payment' is ambiguous," (*id.* at 38-39), because "many individuals who executed a lease were issued an initial draft (that was not paid) and then issued a subsequent replacement draft or check covering the same or substantially the same property." (*Id.* at 39 (footnote omitted).) SWEPI objected that "[p]laintiffs' proposed definition is not clear as to whether the class is defined as those who received any draft that was never paid, only those whose initial draft was not paid, only those whose replacement draft was not paid, only those who were not paid due to a reason other than a title defect or similar issue, or some combination of these categories." (*Id.*)

On September 14, 2015, this court entered a memorandum opinion and order certifying a class action relative to the breach of contract claims in Counts I and I(A) of the Second Amended Complaint, pursuant to Rule 23(b)(3). *See Walney v. SWEPI, LP,* No. 1:13-cv-102, 2015 WL

5333541 (W.D. Pa. Sept. 14, 2015). To address SWEPI's concerns about the ascertainability of class members, the court certified the class according to the following definition:

> Every person who on or after March 14, 2009, signed a Pennsylvania oil and gas lease (labeled "PA Paid Up Lease Rev. 06.09.2011") and/or memorandum thereof in favor of and recorded by SWEPI, LP and received, in exchange therefore, a draft instrument in the amount of the corresponding lease bonus, which draft was neither paid nor replaced by a subsequently issued draft or check relating to the same (or substantially the same) property.
>
> Notwithstanding the foregoing, there shall be excluded from the Class any person electing in writing to be excluded from the Class.

*Id.* at *28-29. The parties agree that the class, thus defined, is comprised of those landowners associated with 246 unique drafts or lease transactions and to whom no bonus payments were ever made by SWEPI and no replacement drafts or checks were ever issued.

On December 4, 2015, plaintiffs filed their pending Motion to Amend Class Definition (ECF No. 93) and supporting brief (ECF No. 94), arguing that the class, as currently defined, unfairly excludes certain leaseholders who should be parties to the litigation. Defendants filed a response (ECF No. 98) and supplemental response (ECF No. 106) in opposition to the motion. Thereafter, plaintiff filed a reply brief (ECF No. 108), and defendants filed a sur-reply (ECF No. 110). On March 3, 2016, the court held oral argument and took the motion under advisement. The matter is now ripe for resolution.

**III.     Discussion**

Plaintiffs originally filed their motion to amend based on their concern that, in those instances where SWEPI issued replacement drafts or checks to landholders, some of the transactions – perhaps as many as seventy-seven -- may have involved situations where the landowner was never paid or was underpaid. (*See* Pls.' Br. Supp. Mot. to Amend Class Definition at 2-3, ECF No. 94.) Plaintiffs objected that that the current class definition

3

improperly excluded "those who received a replacement draft irrespective of whether it was in fact paid, as well [as] those whose replacement drafts, while paid, were in an amount less than the bonus originally promised." (Mot. to Amend Class Definition ¶ 2, ECF No. 93.) To redress these perceived inadequacies, plaintiffs proposed the following amended class definition:

> Every person who on or after March 14, 2009, signed a Pennsylvania oil and gas lease (labeled "PA Paid Up Lease Rev. 06.09.2011") and/or memorandum thereof in favor of and recorded by SWEPI, LP and received, in exchange therefore, a draft instrument in the amount of the corresponding lease bonus, which draft was neither never paid; provided that each such person's monetary claim shall be limited to the extent to which the dollar amount of such original unpaid draft shall exceed the payment, if any, actually made by SWEPI, LP to such person pursuant to a subsequently issued replacement paid nor replaced by a subsequently issued draft or check relating to the same (or substantially the same) property.

(Br. Supp. Mot. to Amend Class Definition at 3.)

Having subsequently engaged in additional discovery relating to the various replacement drafts, as well as further briefing and argument on the issue, the parties now agree that plaintiffs' motion to amend is relevant only as to eleven discrete lease transactions. Each of the eleven transactions involved situations wherein SWEPI issued a replacement check or draft that was ultimately honored, but the amount paid was substantially less than the face value of the landowner's original draft.

SWEPI opposes plaintiffs' motion to incorporate the landowners associated with these eleven transactions (hereafter, the "Additional Claimants") into the class. According to SWEPI, the Additional Claimants, unlike the present class members, are subject to certain individualized defenses such as waiver, estoppel, ratification, novation, or accord and satisfaction because they accepted bonus payments under their lease agreements, albeit in amounts that were less than originally contemplated. SWEPI insists that "[t]o amend the class definition in the way Plaintiffs request would be to inject these individualized inquiries into this lawsuit, destroying any

4

commonality and predominance that the class currently has." (Defs.' Resp. to Pls.' Mot. Amend Class Definition at 9, ECF No. 98.)

Plaintiffs deny that expansion of the class would disrupt the court's prior Rule 23(b)(3) analysis. They insist that SWEPI's putative defenses lack merit and that inclusion of the Additional Claimants will not result in individualized analysis relative to the aforementioned eleven transactions.

As an initial point, plaintiffs argue that SWEPI should be precluded from asserting the doctrines of ratification or accord and satisfaction because these defenses have not been affirmatively pled. Even if SWEPI's putative defenses are permitted to be raised, however, plaintiffs insist that the statute of frauds, codified at 33 Pa. Stat. Ann. §1 (West), renders them invalid, because SWEPI failed to produce written documentation evidencing an intent to forgive its original payment obligations. *See Nolt v. TS Calkins & Assocs., LP,* 96 A.3d 1042, 1047 (Pa. Super. Ct. 2014) (recognizing that a transfer of property rights under an oil and gas lease is subject to the general statute of frauds codified at 33 Pa. Stat. Ann. §1); *In re WHATEVER, LLC*, 478 B.R. 700, 710 (Bankr. W.D. Pa. 2012) (enforcement of alleged oral agreement between debtor and mortgage holder whereby debtor's mortgage obligation would be satisfied by payment of reduced payoff amount was barred by the statute of frauds). Plaintiffs contend that, in the absence of a signed document evidencing the landowners' intent to forgive SWEPI's payment obligations under the original draft instruments, SWEPI's anticipated defenses will necessarily rise or fall on an examination of the lease documents alone, thereby obviating the need for any individualized, fact-specific inquiries. With respect to the defense of accord and satisfaction, plaintiffs insist that SWEPI must produce written documentation evidencing "*either* that the parties recognized a disagreement concerning SWEPI's obligation under the first

5

transaction, or, that the waiver of that obligation is supported by separate consideration." (Pls.' Reply Br. Supp. Mot. Amend Class Definition at 3, ECF No. 108 (emphasis in the original) (citing and discussing *Lucacher v. Kerson,* 48 A.2d 857 (Pa. 1946).)

Plaintiffs elaborated on their position during the court's March 3, 2016 oral argument, at which time they submitted, under seal, a series of documents collectively marked as "Exhibit A" and entitled "Plaintiffs' Underpaid Landowner Analysis." In their "analysis," plaintiffs set forth certain information pertaining to each of the eleven transactions at issue, including the amount of the original signing bonus, the amount of the corresponding replacement draft, the amount of the alleged "underpayment," and the purported reason for SWEPI's issuance of the replacement draft. Also included in Exhibit A were sample documents relating to one specific transaction (*i.e.,* "Transaction Number 8"). In connection with that transaction SWEPI issued a reduced bonus payment to the lessor due to a "change in net acreage." (Pl.'s Ex. A.) These sample documents included an "Amendment of Oil and Gas Lease" and copies of both the original and replacement drafts.

Plaintiffs' intent in submitting these documents was to demonstrate that neither a novation of the original lease agreement nor an accord and satisfaction could be proven relative to Transaction Number 8. According to plaintiffs, the transactional documents in Exhibit A showed that the bonus payments in question were not predicated upon the amount of *acreage* being leased to SWEPI, but were instead intended as a sum certain to be paid in consideration for the lease of a particular *parcel* of land, irrespective of its specific size; thus, once the leases were signed and the lease transaction recorded, the contract was no longer executory and the landowner's contractual promise had been fulfilled, thereby entitling the landowner to full payment of the original bonus amount, notwithstanding the subsequent "change in net acreage."

Plaintiffs argued that the "Amendment of Oil and Gas Lease" and replacement drafts could not be viewed as evidence of a novation, because they did not extinguish the original lease terms or give rise to a separately enforceable, stand-alone contract containing all necessary terms of the lease agreement. *See, e.g., Advanced Mgmt. Research, Inc. v. Emanuel,* 266 A.2d 673, 675-76 (Pa. 1970) (parties' "Supplemental Memorandum of Agreement" did not amount to a novation of their original employment agreement where the supplemental memorandum did not contain all the essential terms of the original agreement, could not be read without reference to the original agreement, and was obviously not intended to operate as an extinguishment of the original contract); *Buttonwood Farms, Inc. v. Carson,* 478 A.2d 484, 486 (Pa. Super. Ct. 1984) (noting that the essential requirements of a novation include the displacement and extinction of a valid contract, the substitution of a new and valid new contract, sufficient legal consideration for the new contract, and the consent of the parties) (citing authority).

Plaintiffs also argued that there was no accord and satisfaction of SWEPI's original payment obligation relative to Transaction Number 8. Specifically, they argued that the lease amendment and drafts did not demonstrate either: (a) an honest dispute between the parties concerning SWEPI's original payment obligation, or (b) additional consideration that was sufficient to support the landowner's agreement to waive SWEPI's original obligation. *See, e.g., T. J. Trauner Assocs., Inc. v. Cooper-Benton, Inc.*, 820 F.2d 643, 646 (3d Cir. 1987) (an "accord and satisfaction" requires a "meeting of the minds" and consideration; in order for consideration to exist, there must be an honest dispute about the payment owed) (citations omitted); *Hagerty Oil Co. v. Chester Cty. Sec. Fund, Inc.,* 375 A.2d 186, 187 (Pa. Super. Ct. 1977) ("An accord and satisfaction is the result of an agreement between the parties .... If an agreement stems from a disputed claim, the acceptance of an amount less than the creditor claims to be due, when

tendered by the debtor in full satisfaction of the creditor's claim, becomes a completed accord and satisfaction.").

Having carefully considered the arguments, evidence, and legal authorities submitted by plaintiffs in support of their motion to amend the class definition, the court will deny plaintiffs' motion, as it is not persuaded that the requested amendment is appropriate or feasible under Federal Rule of Civil Procedure 23(b)(3). As previously discussed by this court, certification of a class action under Rule 23(b)(3) requires, among other things, a determination "that questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Walney v. SWEPI LP*, No. CIV.A. 13-102, 2015 WL 5333541, at *7, 9-22, 25-26 (W.D. Pa. Sept. 14, 2015). As this court explained:

> [t]he predominance criterion "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" [*Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*)](quoting *In re Ins. Broker. Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir.2009)). In assessing predominance, a court "must examine each element of a legal claim 'through the prism' of Rule 23(b)." *Marcus v. MVW of N. Am., LLC*, 687 F.3d 583, 600 (3d Cir. 2012) (quoting *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 630 (3d Cir.2011)); *see [In re Cmty. Bank of N. Va. Mortgage Lending Practices Litig.]*, 795 F.3d 380, 2015 WL 4547042, at *14 [(3d Cir. July 29, 2015)]. "'Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Marcus*, 687 F.3d at 600 (quoting [*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)]).

*Id.*, at *9. In this case, plaintiffs' proposed expansion of the class would inject into the litigation numerous lines of particularized inquiry relative to the Additional Claimants, making their claims unsuitable for classwide resolution.

8

Plaintiffs' attempts to discount SWEPI's anticipated defenses are unpersuasive for a number of reasons. First, given Rule 15's liberal policy of "freely" permitting amendments to pleadings "when justice so requires," Fed. R. Civ. P. 15(a)(2), this court would not be inclined to preclude SWEPI's anticipated defenses solely on the ground that they were not previously pleaded. Such a ruling would be particularly draconian because much of the information driving plaintiffs' pending motion was not known to the parties at the time that SWEPI filed its answer to the Second Amended Complaint. *See Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir.1991) ("A 'defendant does not waive an affirmative defense if [h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.'")) (internal quotation marks omitted, citations omitted, alterations in the original).

Second, it is not clear at this procedural juncture that SWEPI's anticipated defenses vis-a-vis the Additional Claimants would necessarily fail as a matter of law. Plaintiffs' arguments to the contrary are rooted in the assumption that the specific acreage of a leased parcel was not material to the terms of payment; thus, under plaintiffs' theory, once a landowner's lease agreement was executed and the transaction was recorded, that landowner became entitled to full payment of the original bonus amount irrespective of the parcel's specific acreage. This theory is arguably belied, however, by language in the form lease agreements – specifically, Paragraph (2) (entitled "Description"). In that paragraph the specific acreage of each leased parcel is expressly "stipulated to... for the purpose of calculating payments." (*See, e.g.,* Pls.' Br. Supp. Mot. for Class Cert. at Exs. 1-9, Form Lease ¶ (2), ECF Nos. 63-1 through 63-9.) Based upon the language of Paragraph (2), SWEPI has an arguable basis for disputing its original payment obligation in situations where a discrepancy in the landowner's acreage was discovered after SWEPI's issuance of the initial draft. In such cases, SWEPI might be able to demonstrate the

9

existence of an accord and satisfaction by arguing that its agreement to lease a smaller parcel and its payment of a smaller bonus award served as adequate consideration for the landowners' agreement to forgive SWEPI's original payment obligation.

Also noteworthy is Paragraph (5) of the form lease agreement (entitled "Lessor's Interest"), which provides, in relevant part, that "[i]f Lessor owns an interest in the leased premises less than the entire and undivided estate herein leased, then all payments herein provided shall be paid by Lessee only in the proportion to which Lessor's interest bears to the whole and undivided estate." (*See id.*, Form Lease ¶ (5).) In situations where SWEPI discovered, after issuance of the original draft instrument, that the landowner held less than a one-hundred percent interest in the underlying gas and oil rights, SWEPI might be able to argue, on the basis of Paragraph (5), that its issuance of a smaller bonus payment fully complied with the terms of the lease.

A similar result was reached in *Shedden v. Anadarko E. & P. Co., L.P.,* --- A.3d ---, No. 103 MAP 2014, 2016 WL 1228867 (Pa. Mar. 29, 2016). In *Shedden,* a husband and wife purported to lease the oil and gas rights to a 62-acre parcel of land, not knowing that they actually owned of record only a one-half interest in the underlying oil and gas rights at the time the lease was executed. As consideration for the lease, the lessee, Anadarko E. & P. Co., L.P. ("Anadarko"), agreed to pay the landowners $80 per acre, and a "purchase order" was issued to the landowners in the amount of $4,960, representing $80 for each of the 62 acres. After a title search revealed that the landowners held only a one-half interest in the underlying oil and gas rights, Anadarko tendered payment in the amount of $2,480 – half of the bonus amount originally contemplated, and the landowners ultimately accepted this reduced payment. The landowners later acquired full title to the oil and gas rights through a quiet title action. Anadarko

subsequently attempted to exercise an option to extend the terms of the lease relative to all 62 acres. In response to the actions of Anadarko, the landowners filed a declaratory judgment action in which they sought a declaration that the lease related only to oil and gas rights on 31 acres, rather than 62 acres. The lower court ruled that the landowners were precluded from taking this position under the doctrine of estoppel by deed.[1]

On appeal from the adverse judgment, the landowner/appellants in *Shedden* argued that the lease terms had been modified as a result of their acceptance of a bonus payment of one-half of the originally agreed upon sum. The Pennsylvania Supreme Court rejected this argument, reasoning that:

> Anadarko originally agreed to pay Appellants an $80 per acre bonus for the oil and gas rights to the Property. Paragraph 3.C of the Lease provided, however, that if Appellants owned less than all of the oil and gas rights to the Property, they would be entitled to payment only in proportion to the oil and gas rights they actually owned. Pursuant to that paragraph, upon finding that Appellants owned only one-half of the oil and gas rights to the Property, under the express terms of the Lease, Anadarko was obligated to pay Appellants only one-half of the agreed-upon bonus payment – i.e., $40 per acre – and this was the exact consideration that Appellants received. Accordingly, rather than a modification of the Lease, Anadarko's payment of a reduced bonus was in accord with its precise terms, and so cannot be considered as additional consideration or evidence of an agreement to modify the Lease.

*Shedden,* 2016 WL 1228867, at *4. The court upheld the lower court's ruling that the doctrine of estoppel by deed precluded the landowners from arguing that the lease agreement covered only 31 of their 62 acres.[2]

Under the logic of *Shedden,* even if SWEPI cannot establish the elements of a novation or accord and satisfaction, SWEPI may nevertheless be able to successfully defend many, if not all,

---

[1] This doctrine holds that, "[w]here one conveys with a general warranty land which he does not own at the time, but afterwards acquires the ownership of it, ... such acquisition inures to the benefit of the grantee, because the grantor is estopped to deny, against the terms of his warranty, that he had the title in question." *Shedden,* 2016 WL 1228867, at *4 (quoting *Jordan v. Chambers,* 75 A. 956, 958 (Pa. 1910)).

[2] This aspect of *Shedden* is not relevant to the instant case, as the facts at bar do not implicate the doctrine of estoppel by deed.

11

of the claims asserted by the Additional Claimants on the ground that its payment of a reduced bonus fulfilled its contractual obligations insofar as the reduced payment was consistent with the net acreage or the net mineral interest conveyed by the particular claimant. Alternatively, SWEPI could plausibly argue that full payment of the original bonus amounts would constitute an unjust enrichment for the Additional Claimants. *See Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) ("To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.") (quotation marks and citation omitted).

In making these observations, the court need not, and does not, render any definitive opinion about the ultimate merits of SWEPI's putative defenses. For present purposes, it is sufficient simply to note that those defenses have colorable merit, and SWEPI's assertion of those defenses would necessitate discovery and argument concerning issues that are not common to the existing class members.[3]

It is also problematic for class certification purposes that SWEPI's issuance of replacement drafts and checks occurred for varying reasons. Plaintiffs' Exhibit A shows that six of the eleven transactions at issue involved a "change in net acreage," while other transactions involved a "change in landowner interest."[4] One transaction purportedly involved the reissuance

---

[3] Plaintiffs' invocation of the statute of frauds does not dictate a different conclusion. SWEPI contends that, if amendment of the class definition is permitted, it will produce written documentation, signed by the Additional Claimants, in support of its anticipated defenses and in full compliance with the statute of frauds. The court need not resolve this issue at present because, again, it is enough to observe that plaintiffs' invocation of the statute of frauds implicates collateral inquiries that are not common to the existing class members.

[4] Plaintiffs contend that any errors that may have occurred with respect to calculating net acreage or determining the landowners' interest in the underlying oil and gas rights would, at most, amount to a unilateral mistake on the part of SWEPI and would not constitute grounds for voiding SWEPI's payment obligations under the original drafts. But this argument merely raises additional questions about whether, with respect to any particular transaction, the landowner bore some degree of fault for the mistake or whether SWEPI acted negligently. *See A.S. v. Office for Dispute Resolution*, 88 A.3d 256, 266 (Pa. Commw. Ct. 2014) (Under Pennsylvania law, "if a mistake is unilateral, there is no basis for rescinding a contract if the unilateral mistake 'is not due to the fault of the party not mistaken but rather to the negligence of the party who acted under the mistake.'")(quoting *Holt v. Dep't of Public Welfare*,

of a draft in order to correct an "[e]rror in calculation of [the] original draft." Still another involved a situation in which an additional parcel was actually added, but the "per-acre bonus payment" amount was decreased. (*Id.*) In some (but not all) of the transactions, an amendment to the original lease was apparently executed and the amendment was recorded.

Given these circumstances, SWEPI's defense of the Additional Claimants' breach of contract claims will necessarily involve a substantial degree of individualized inquiry into the particular circumstances giving rise to its issuance of each replacement draft or check. The legal theories underlying SWEPI's defenses may differ depending on the particularized circumstances of each transaction. Certification of a subclass is not an option, as there has been no showing that the subclass would have a suitable class representative or would otherwise satisfy the requirements of Rule 23. Consequently, the court is not persuaded that the Additional Claimants' breach of contract claims can be adjudicated on a classwide basis, consistent with the mandates of Rule 23(b)(3).

## IV. Conclusion

Based upon the foregoing reasons, plaintiffs' Motion to Amend Class Definition will be denied. An appropriate order will be entered.

By the court,

s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated: May 13, 2016

---

678 A.2d 421, 423 (Pa.Commw.Ct.1996)). These questions can only be resolved on an individualized basis, which thus underscores the reasons why the Additional Claimants cannot feasibly be incorporated into the class.