IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**THOMAS J. WALNEY and**   )
**RODNEY A. BEDOW, SR.,**   )
*individually and on behalf of all*  )
*others similarly situated,*    )  CIVIL ACTION No. 13-102 Erie
           )
    Plaintiffs,    )
           )
  v.         )
**SWEPI LP** *and* **SHELL ENERGY** )
**HOLDING GP, LLC,**    )
           )
    Defendants.   )

OPINION

Presently pending before the court in the above-captioned matter are the following

motions: (a) the parties' Joint Contested Motion for Approval of Plan of Class Action Notice

(ECF No. 114); (b) the Second Motion to Amend Class Definition (ECF No. 117) filed by

plaintiffs Thomas J. Walney and Rodney A. Bedow, Sr. ("plaintiffs"); and (c) plaintiffs' Motion

to Expedite Entry of Orders (ECF No. 127). For the reasons that follow, the parties' Joint

Contested Motion for Approval of Plan of Class Action Notice will be granted with directions

that the parties incorporate modifications to the class notice forms and class order as set forth in

this opinion, plaintiffs' Second Motion to Amend Class Definition will be granted, and plaintiffs'

Motion to Expedite Entry of Orders will be denied as moot.

## I.  Plaintiffs' Second Motion to Amend Class Definition (ECF No. 117)

On September 14, 2015, this court entered a memorandum opinion and order certifying

this case as a Rule 23(b)(3) class action with respect to Counts I and I(A) of the Second

Amended Complaint. In doing so, the court defined the class to include:

Every person who on or after March 14, 2009, signed a Pennsylvania oil and gas lease (labeled "PA Paid Up Lease Rev. 06.09.2011") and/or memorandum thereof in favor of and recorded by SWEPI, LP and received, in exchange therefore, a draft instrument in the amount of the corresponding lease bonus, which draft was neither paid nor replaced by a subsequently issued draft or check relating to the same (or substantially the same) property.

Notwithstanding the foregoing, there shall be excluded from the Class any person electing in writing to be excluded from the Class.

(Mem. Op. dated Sept. 14, 2015 at 49, ECF No. 90.) Plaintiffs subsequently filed a motion to amend the class definition (ECF No. 93), which was denied on May 13, 2016 (ECF No. 111).

On June 7, 2016, plaintiffs filed their Second Motion to Amend Class Definition (ECF No. 117). The motion was based on class counsel's discovery that another lease form, *i.e.*, "PA Paid Up Lease Rev. 05.01.2011" (hereafter, "Lease Form 05.01.2011"), had been utilized by SWEPI LP ("SWEPI") and Shell Energy Holding GP, LLC ("Shell" and, together with SWEPI, "defendants") during the time frame relevant to this lawsuit. Plaintiffs sought to amend the current class definition to include these additional leaseholders. They suggested that the amendment could easily be accomplished by simply inserting a reference to Lease Form 05.01.2011 into the current class definition.

After defendants filed their response to the motion and related materials (ECF Nos. 121, 122), the court held a motion hearing on August 11, 2016. As reflected in the transcript of that hearing (ECF No. 131), the court indicated its willingness to amend the class definition in accordance with plaintiffs' suggestion. The court noted, however, that it would add an exception to exclude from the class "any lessor who has filed a separate lawsuit." (*See* Tr. of 8/11/16 Mot. Hrg. at 9, ECF No. 131.) The intent of the court was to exclude those landowners who had previously obtained a favorable Rule 56 judgment in the case of *Masciantonio v. Swepi LP,* Civil Action No. 4:13-cv-797, 2016 WL 3856122 (M.D. Pa. July 15, 2016). The court left it to the parties to craft a proposed order that effectuate the intended amendment. (Hrg. Tr. at 10.)

Having been unable to reach an agreement on the appropriate language, the parties

submitted their respective proposals.  Plaintiffs suggest the following (with proposed changes in

the class definition underlined):

> Every person who on or after March 14, 2009, signed a Pennsylvania oil and gas
> lease (labeled "PA Paid Up Lease Rev. 06.09.2011" or "PA Paid Up Lease Rev.
> [05.01.2011]")[1] and/or memorandum thereof in favor of and recorded by
> SWEPI, LP and received, in exchange therefore, a draft instrument in the amount
> of the corresponding lease bonus, which draft was neither paid nor replaced by a
> subsequently issued draft or check relating to the same (or substantially the same)
> property.
>
> Exclusions.  Notwithstanding the foregoing, there shall be excluded from the
> Class any Person electing in writing or email to be excluded from the Class, and
> any Person whose individual claim for payment of the lease bonus has been
> sustained or denied by a verdict or dispositive order of a court in a separate
> lawsuit, irrespective of the outcome of any appeal.

(See ECF No. 127-2.)  In proposing this language, plaintiffs insist that the key distinction for

exclusion from the class, consistent with *Masciantonio,* should not be whether a separate lawsuit

is *filed,* but whether the individual claim has been *adjudicated*.  They maintain that their

proposed language is necessary in order to protect the interests of putative class members – like

class counsel's other individual clients – who have prophylactically filed (or may yet file)

lawsuits in state court.  Their concern is that these putative class members might otherwise be

excluded from the class notwithstanding their right to discontinue their separate actions at a time

when decertification of this class action is no longer a possibility.

Defendants counter that plaintiffs' proposed language is unduly confusing and

unnecessary.  They propose an alternative amendment to the last sentence of the class definition,

which (in lieu of the underlined wording) would state:  "Any person who has already filed a

---

[1] Plaintiffs' proposed amendment references "PA Paid Up Lease Rev. *05.11.2011*," but the correct identification of the lease form is "PA Paid Up Lease Rev. 05.01.2011."

separate federal court lawsuit related to lease bonuses is excluded from the Class."[2]  Defendants

maintain that, by referencing other *federal* lawsuits, their proposed order will achieve the

purpose of keeping the landowners in *Masciantonio* out of the class while allowing class

counsels' state court plaintiffs to remain in the class.  Defendants state they are unaware of any

other Pennsylvania landowners, other than the *Masciantonio* plaintiffs, who have filed suit in

federal court related to lease bonuses.  (*See* Defs.' Resp. to Pls.' Mot. Expedite Entry of Orders

at p. 3, ECF No. 128.)  Their concern is that plaintiffs' proposed language would encourage or

allow inappropriate "sideline-sitting," i.e., a situation where a putative class member might opt

out of the class, file a separate lawsuit, then later dismiss the suit and rescind the opt-out after

waiting to see the outcome of dispositive motions in the two respective cases.

Analysis

The disagreement here centers on how to define the status of leaseholders who have filed,

or may yet file, parallel litigation involving claims for signing bonuses.  Defendants claim that

they know of no other pending cases besides those involving the Masciantonios and class

counsel's individual state court clients, but there could theoretically be other lawsuits pending

somewhere in the Commonwealth.  Plaintiffs would clearly like these putative class members to

remain in the class, at least until the point where it becomes clear that there will be no

decertification.  At least one treatise recognizes a "recurring issue" as to "whether a putative

class member's participation in, or initiation of, separate litigation is a sufficient indication of a

desire to opt out of the class."  3 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §9:46 (5th

ed. 2013).  According to *Newberg*, "[m]ost courts hold that pending parallel litigation is ***not***

sufficient to communicate an opt-out request, . . . though a few courts have found that filing

_____

[2] Despite advocating this language, defendants did not include it in the proposed order attached as Exhibit B to their
response.  (*See* ECF No. 128-2.)

4

separate litigation based on the same claims may be considered a reasonable indication of the request to opt out." *Id.* §9:46 (Supp. Dec. 2013) (emphasis in the original) (citing decisions outside the Third Circuit).

Assuming, then, that other cases involving putative class members might be pending either now or hereafter, the individual litigants would not necessarily be excluded from the class under the majority rule unless they formally opted out in accordance with the procedures approved by the court. Once class members request exclusion, they should ordinarily not be permitted, without leave of court, to rescind their "opt out" after the court's deadline for rescinding exclusions has passed.[3] *See, e.g., Klein v. Robert's Am. Gourmet Food, Inc.*, 808 N.Y.S. 2d 766, 771 (N.Y. App. Div. 2006) (noting, in the context of a class settlement, that "[g]enerally, permission to opt back in must be obtained from the court . . . unless the terms of the settlement provide otherwise"); 3 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §9:45 (5th ed. 2013) ("'[T]he state of the class at the end of the opt-out period should be fixed enough to allow parties to conduct their affairs.'") (quoting MANUAL FOR COMPLEX LITIGATION

---

[3] Courts typically set a period for rescission of opt-outs that is either coextensive with, or slightly longer than, the time period for requesting exclusion. *See, e.g., In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.,* No. 11-MD-02284, 2013 WL 509886, at *2 (E.D. Pa. Feb. 12, 2013) (allowing "[a]ny Class Member who opts out [to] rescind or revoke such decision by submitting a written revocation to the Claims Administrator, provided such revocation is postmarked by the Opt–Out Deadline"); *Jaffe v. Morgan Stanley & Co.,* No. C 06-3903, 2008 WL 346417, at *14 (N.D. Cal. Feb. 7, 2008) (allowing 61-day opt-out period following mailing of class notice and 75-day period for rescinding opt-outs); *Int'l Longshore & Warehouse Union, Local 142 v. C. Brewer & Co.,* No. CIV.CV0600260, 2007 WL 4145228, at *5 (D. Haw. Nov. 20, 2007) (45-day period for opting out and 60-day period for rescinding a prior opt-out); *Adams v. Inter-Con Sec. Sys., Inc.,* No. C-06-5428MHP, 2007 WL 3225466, at *6 (N.D. Cal. Oct. 30, 2007) (45-day opt out period and 60-day rescission period); *Tucker v. Walgreen Co.,* No. CIV. 05-440, 2007 WL 2915578, at *4 (S.D. Ill. Oct. 5, 2007) (opt-outs due no later than 30 days prior to date set for final fairness hearing on proposed class settlement; rescissions of opt-outs due no later than 10 days prior to the fairness hearing); *Satchell v. Fed. Express Corp.,* No. C 03 2878, 2007 WL 1114010, at *7 (N.D. Cal. Apr. 13, 2007) (45-day period for opting out and 52-day period for rescission of opt-out requests*); Klein v. Robert's Am. Gourmet Food, Inc.*, 808 N.Y.S.2d 766, 771 (N.Y. App. Div. 2006) ("It has been held... that if, prior to the deadline set for requests for exclusion, an individual who has opted out clearly and unequivocally makes known to the court a desire to opt back into the class, he or she should be able to rescind any prior contrary communication to the Court asking to be excluded from the class.") (internal quotation marks and citations omitted).

(FOURTH) §21.321 (2004)).  This limitation on requesting exclusion and rescinding such requests should prevent the kind of "sideline-sitting" that defendants are concerned about.

For those class members who may have filed (or will try to file) individual lawsuits while also desiring to remain *in* the class, complications could potentially arise.  The *Manual for Complex Litigation* recognizes that "[p]ersons who are members of a certified federal court class might pursue their own separate actions in the same court or in other courts even if they have not elected to be excluded from the class."  MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.42 (2004).  The *Manual for Complex Litigation* recommends that federal courts in these situations consider coordinating the parallel litigation with other courts, where possible.  *Id.*  Alternatively, if informal coordination is unsuccessful, the federal court overseeing the class action may entertain a motion to enjoin individual related cases on the ground that they conflict with, or threaten the integrity of, the federal class action.  *Id.*  *See* 28 U.S.C. §2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court *except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction*, or to protect or effectuate its judgment.")(emphasis supplied)*; In re Diet Drugs Prods. Liab. Litig.,* 282 F.3d 220, 235 (3d Cir. 2002) (holding that "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction.") (citing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202-04 (3d Cir. 1993)); *Eberle v. Wilkinson*, No. CIVA 2:03-CV-272, 2008 WL 886138, at *2 (S.D. Ohio Mar. 28, 2008) ("Where duplicative federal actions are pending, a federal court may, in the exercise of its discretion, stay one of the actions, permit both actions to proceed, or enjoin parties from proceeding in one of those actions. . . . 'In weighing these three options, courts often proceed ...

under the rule of thumb that the entire action should be decided by the court in which an action was first filed.'") (citing and quoting *Smith v. Sec. and Exchange Comm'n,* 129 F.3d 356, 360 (6th Cir. 1997)) (second ellipsis in the original). Ultimately, "[t]he binding effect of a judgment in an individual or class action on other related actions depends on principles of claim and issue preclusion." MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.42 (2004).

As matters presently stand in this case, there does not appear to be any present danger of overlapping lawsuits or conflicting adjudications. The *Masciantonio* plaintiffs' lease claims were already successfully resolved and, in any event, their lease was found to be materially distinguishable from the ones at issue in this case, in part because of a particular provision in their lease addendum. *See Masciantonio v. SWEPI LP,* No. 4:13-CV-797, 2016 WL 3856122, at *6 n. 4 (M.D. Pa. July 15, 2016). Class counsel's individual clients have reportedly stayed their state court litigation pending further developments in this case. They apparently intend to dismiss those lawsuits at such time as the risk of decertification no longer exists or the merits of this case are adjudicated. Defendants are in the best position to know whether any additional claims for lease bonus payments are pending in this Commonwealth, and they represent that, to the best of their knowledge, no additional individual lawsuits are currently pending.

To the extent other individual lawsuits may present themselves, plaintiffs' proposed order seems preferable to that of defendants. Unlike defendants' proposal, plaintiffs' language does not artificially differentiate between lawsuits filed in state court and those filed in federal court. Plaintiffs' language recognizes that, in either situation, the claimants in these cases are presumptively members of this class unless they opt out. The concern expressed by defendants about "sideline sitting" will be eliminated by this court's establishment of a firm deadline for opting out of the class and for rescinding prior exclusion requests. (The latter point is discussed

*infra.*)  In the somewhat unlikely event that additional, individual claimants present themselves

and do *not want to opt out* of this litigation, the court can adequately address these contingencies

on a case-by-case basis.  Specifically,

- the court can evaluate in the first instance whether the individual case has been or will be stayed pending developments in this case; and

- if the individual case is not stayed, this court can consider coordinating pretrial proceedings with the other court or, if appropriate, entertain a motion to enjoin the individual action based on considerations of judicial economy, comity, and issue and claim preclusion.

Based upon the foregoing considerations, the court approves plaintiffs' proposed changes

to the class definition, with the clarification that the new class definition shall refer to Lease

Form "05.01.11" rather than "05.11.11."  (*See* n.1, *supra.*)

## II.     The Parties' Joint Contested Motion for Approval of Plan of Class Action Notice (ECF No. 114)

### A.     Reference in the Class Notice Order Regarding a Deadline for Opt-Outs or Rescissions of Opt-Outs From the Class

A dispute remains concerning the Class Notice Order with respect to the applicable time-

frame for opting out of the class or rescinding exclusionary requests.  Plaintiffs' proposed form

of order (ECF No. 127-3 at 3-4, ¶¶ 5-7) states the following:

> 5. <u>The Exclusionary Period</u>.  The expiration date of the exclusionary (opt-out) period described in each Mail and Publication Notice shall be set by Class Counsel to be such date as is not less than 60 days following the first mailing of the Mail Notices.

> 6. <u>Additional Class Members</u>.  If as the result of the publication of notice or otherwise, any person who has not received a Mail Notice communicates to Class Counsel what he determines to be a creditable claim of membership in the class, Class Counsel shall immediately:  (1) notify Defendants' Counsel of the claim of such person; and (2) transmit a Mail Notice by U.S. First Class Mail to such person, who shall, to the extent any then remaining unexpired portion of the exclusionary period does not accommodate same, be accorded not less than twelve days from the date of such mailing within which to elect exclusion.  Notwithstanding the foregoing no person not listed in Exhibit 3 shall be added to the putative class who does not first contact class counsel prior to such date as is the earlier of 30 days prior to the date of the commencement of trial and 90 days following the filing of a dispositive motion by any party.

7. <u>Class Counsel's Certifications</u>.  Within 20 days following expiration of the date of the exclusionary period, Class Counsel shall cause to be filed declarations as follows:

> (a) certifying that the Mail Notices shall have been mailed in accordance with this Order, with specificity as to the name and address of each addressee and the date of mailing to such addressee;

> (b) certifying that the Publication Notices shall have been published in accordance with this Order, with specificity as to the date on and newspaper in which each shall have been published; and

> (c) certifying the identity of each person who has timely elected (and not thereafter rescinded) exclusion from the class, and shall thereafter file such supplemental certifications as may be necessary to update same by reason of additional timely rescissions and exclusions.

Plaintiffs maintain that the purpose of their proposed language is simply to protect the monetary claims of class members who have not, heretofore, been identified.  They acknowledge that persons coming within the class definition are automatically members of the class, whether they realize it or not (assuming they do not opt out); however, plaintiffs are concerned that the *monetary claims* of those class members who are not yet on the class roster will remain unknown and unasserted in the damages phase of this litigation unless there is a fair mechanism in place for allowing these individuals to identify themselves and their monetary claims prior to judgment or settlement.

Defendants object that plaintiffs' proposed language creates uncertainty about the effective date by which putative class members must opt out of the class (or rescind any exclusion requests).  Defendants assert that, in emails exchanged after the August 11, 2016 motion hearing, class counsel explained his understanding that paragraphs 6 and 7 would allow any class member opting out of the class a period of up to "90 days following the filing of a dispositive motion to change their minds."  (ECF No. 127-1 at 11-12.)  Defendants object to any process that allows putative members to come and go until 90 days after a dispositive motion is

filed.  To that end, and to avoid confusion about who is in or not in the class, defendants propose the following changes to Paragraphs 5 through 7:

> 5.  <u>The Exclusionary Period</u>.  The expiration date of the exclusionary (opt-out) period described in each Mail and Publication Notice shall be set by Class Counsel to be such date <u>that is</u> ~~as is not less than~~ 60 days following the first mailing of the Mail Notices.  <u>To be effective, any exclusion request and any request for rescission of any exclusion request must be received by Class Counsel by the end of the 60-day Exclusionary Period.  After receipt of any written request for exclusion from the Class from any putative Class member, neither Class Counsel nor Defendants' Counsel may contact or communicate with such person concerning the opt-out request, except with prior permission of the Court.</u>

> 6.  <u>Additional Class Members</u>.  If as the result of the publication of notice or otherwise, any person who has not received a Mail Notice communicates to Class Counsel what he determines to be a creditable claim of membership in the class, Class Counsel shall immediately:  (1) notify Defendants' Counsel of the claim of such person; and (2) transmit a Mail Notice by U.S. First Class Mail to such person, who shall<u>, have until the end</u> ~~to the extent any then remaining unexpired portion~~ of the E<u>e</u>xclusionary P<u>p</u>eriod ~~does not accommodate same, be accorded not less than twelve days from the date of such mailing~~ within which to elect exclusion.  Notwithstanding the foregoing no person not listed in Exhibit 3 shall be added to the ~~putative~~ class <u>roster</u> who does not first contact class counsel prior to <u>the end of the Exclusionary Period</u> ~~such date as is the earlier of 30 days prior to the date of the commencement of trial and 90 days following the filing of a dispositive motion by any party~~.

> 7.  <u>Class Counsel's Certifications</u>.  Within 20 days following expiration of the date of the exclusionary period, Class Counsel shall cause to be filed declarations as follows:

>> (a) certifying that the Mail Notices shall have been mailed in accordance with this Order, with specificity as to the name and address of each addressee and the date of mailing to such addressee;

>> (b) certifying that the Publication Notices shall have been published in accordance with this Order, with specificity as to the date on and newspaper in which each shall have been published; and

>> (c) certifying the identity of each person who has timely elected (and ~~not thereafter~~ <u>timely</u> rescinded) exclusion from the class~~, and shall thereafter file such supplemental certifications as may be necessary to update same by reason of additional timely rescissions and exclusions~~.

(ECF No. 128-4 at 3-4.)

<u>Analysis</u>

The problem identified by class counsel – how to protect valid claims of belatedly identified class members – was addressed at some length during the August 11, 2016 motion hearing. (See Hrg. Tr. at 35-43.) The court recognized that individuals coming within the parameters of the class definition are members of the class automatically, but the claims of those class members could be inadvertently compromised if they are not identified and asserted prior to a final monetary judgment being entered. After discussing the problem at some length, the court tentatively approved, and defense counsel seemingly stipulated to, the language that is now set forth in Paragraph 6 of plaintiffs' proposed order. (*See* Hrg. Tr. at 40-43 and Proposed Order, ECF No. 126-1, at 3, ¶6; compare Order at ECF No. 127-3, at 3, ¶6.)

Nevertheless, the court will revisit the opt-out scheme set forth in plaintiffs' proposed class notice order in an effort to simplify and streamline the opt-out procedures. Rule 23 requires the class notice to state "that the court will exclude from the class any member who requests exclusion" and to fix "the time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v) and (vi). According to the *Manual for Complex Litigation*, "[c]ourts usually establish a period of thirty to sixty days (or longer if appropriate) following mailing or publication of the notice for class members to opt out." MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.321 (2004).[4] Notwithstanding this, a judge usually has the discretion to treat a tardy opt-out request as effective. According to the *Manual for Complex Litigation*:

---

[4] Plaintiffs cite *Sunrise Toyota, Ltd. v. Toyota Motor Co*., 17 Fed. R. Serv. 2d 132, 1973 WL 778, at *4 (S.D.N.Y. 1973), for the proposition that a class member may rescind his exclusion request at any time before adjudication and, therefore, an exclusion request is actually inchoate until that time. (*See* Pls.' Br. at 6 (ECF No. 129).) Plaintiffs' interpretation appears to be an overly broad reading of *Sunrise Toyota*, which involved requests for exclusion from a class-wide settlement. In *Sunrise Toyota,* the court construed a previous version of Rule 23(c) as "indicat[ing] that a member of the class is not legally excluded from the class until the court so orders," and therefore, "a member of the class is entitled to withdraw the request for exclusion before it has been incorporated into a court order." 1973 WL 778, at *4. Because the court had not yet ruled on certain requests for exclusion at the time that some of the requests were rescinded, the court recognized the rescissions as valid. The court did not hold

[f]actors affecting this decision include the reasons for the delay, whether there was excusable neglect, and whether prejudice resulted.[ ]  Relief from deadlines, however, should be granted only if the delinquency is not substantial or if there is good cause shown.  The state of the class at the end of the opt-out period should be fixed enough to allow parties to conduct their affairs. A general extension of time for making the election may be appropriate if logistical or other problems require further mailings or publications.

MANUAL FOR COMPLEX LITIGATION §21.321.  *Newberg* suggests that belated opt-outs be analyzed under a traditional "excusable neglect" standard:

A class member who fails to meet the deadline but still wishes to be excluded from the class must show excusable neglect for her failure to opt out.  The standard arises from the court's discretion to grant an extension of time under Federal Rule of Civil Procedure 6(b)(2), to grant relief from its judgment or orders under Rule 60(b)(1), and to enter orders managing class actions under Rule 23(d); it is identical under all three.  To demonstrate "excusable neglect," a movant "must show both good faith and a reasonable basis for not acting within the specified period." [ ]  Even if a litigant meets that standard, however, the district court retains discretion to grant or deny the extension.

NEWBERG ON CLASS ACTIONS § 9:45 (internal footnotes omitted).

Here, as an alternative to plaintiffs' proposed paragraphs 5 through 7, the court will establish a 60-day period during which class members may opt-out of the class or rescind any prior opt-out requests.  To the extent any belatedly identified class members indicate a desire to exclude themselves from this litigation after the passing of this deadline (or belatedly attempt to rescind an opt-out), the court will address their circumstances after a motion is filed raising that matter.  The motion will be resolved on an individualized basis under the usual "excusable neglect" standard.

For presently unidentified class members who would want to remain *in* the class, the question arises with respect to how their claims can be protected.  Plaintiffs are concerned about

---

that, in every Rule 23(b)(3) class action, exclusionary requests may necessarily be rescinded up until the time a final order of adjudication is entered.  Moreover, the case is potentially distinguishable insofar as the court indicated it "would apply the traditional powers of an equity court to permit the withdrawals of the requests for exclusion because all parties consent to it and no one is prejudiced by it.[ ]"  *Id.* (footnote omitted).  Similar facts are not present in the instant case at this juncture.

the monetary claims of unidentified class members that may never be asserted. It, however, is premature to address this contingency at the present time. By definition, unidentified class members remain part of the class and will receive the benefit of any favorable liability determination. Prejudice to those individuals would occur, if at all, only in the event that they are left out of a favorable monetary judgment. At this point, it is impossible to know whether such a scenario will come to pass, since it remains to be seen, *e.g.*, whether there will be a settlement, whether future developments will necessitate a decertification of the class, whether plaintiffs will prevail on the liability issue, whether bifurcation of liability and damages will be appropriate, whether the resolution of damages will proceed on an individualized basis or whether damages issues will be determined on a class-wide, formulaic basis.

To the extent plaintiffs ultimately prevail on the issue of liability and it becomes necessary to revisit the claims of unidentified class members, it is worth noting that Rule 23(d)(1)(B) authorizes the court to give class members "appropriate notice" at "any step in the [class] action," including notice as to "the proposed extent of the judgment." Fed. R. Civ. P. 23(d)(1)(B). Thus, the rule provides an opportunity for the court to impose a notice and claims procedure, similar to the procedures utilized in class-wide settlements, whereby class members are constructively notified that they must assert a damages claim within a defined time period or risk waiving such claim. Monetary claims that are raised belatedly after the deadline can be addressed, if need be, on an individualized basis based on considerations of excusable neglect, good cause, and due process.

Admittedly, these circumstances create some degree of uncertainty about the full extent of defendants' potential liability for damages in this case. On balance, however, it is not unfair that defendants should shoulder the burden of this uncertainty. First, this is a relatively small and

well-defined class. Although the precise parameters of the class have changed over time, the class roster has been fairly well vetted at this point, and it seems unlikely that the roster will grow significantly once notice has been sent and the time for opting out has expired. Second, because defendants have at all times been in possession of the information from which class membership was derived, it is reasonable to burden them with the risk that as-yet unidentified members may be added to the roster at a later point in time. Third, while defendants suggest that the class roster should be rigidly fixed as of the date that serves as the opt-out deadline, Rule 23 does not appear to require such rigidity. For example, the *Manual for Complex Litigation* suggests only that "[t]he state of the class at the end of the opt-out period should be fixed enough to allow parties to conduct their affairs." *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §21.321 (2004). Fourth, defendants' interests will be adequately protected if, as explained above, the court resolves belated requests for monetary payments based upon concepts of excusable neglect, good cause, and due process.

In light of the foregoing considerations, the court will not approve the language set forth in paragraphs 5 through 7 of plaintiffs' proposed order. Instead, the court approves the more straightforward approach outlined in defendants' paragraphs 5 through 7. However, the court will direct that the second sentence in paragraph 5 of defendants' proposed order be amended to read as follows: "To be effective, any exclusion request and any request for rescission of an exclusion request must be received by Class Counsel by the end of the 60-day Exclusionary Period, unless the court finds that excusable neglect or good cause for the delinquency is shown."[5] In addition, the court will direct that paragraph 6 of defendants' proposed order be amended to read as follows:

---

[5] As discussed in more detail below, the court will also direct that the last sentence in defendants' paragraph 5 be stricken.

6. <u>Additional Class Members</u>.  If, as the result of the publication of notice or otherwise, any person who has not received a Mail Notice communicates to Class Counsel what he determines to be a credible claim of membership in the class, Class Counsel shall immediately:  (1) notify Defendants' Counsel of the claim of such person; and (2) transmit a Mail Notice by U.S. First Class Mail to such person.  The newly identified class member shall have until the end of the Exclusionary Period within which to elect exclusion, unless the court finds that excusable neglect or good cause for the delinquency is shown.  Any such newly identified class member who is not excluded from the class shall be added to the class roster set forth in Exhibit 3.

Finally, the court will direct that paragraph 7(c) of defendants' proposed order be amended to read as follows:  "(c) certifying the identity of each person who has timely elected (and not thereafter effectively rescinded) exclusion from the class, and shall thereafter file such supplemental certifications as may be necessary to update same by reason of additional rescissions and exclusions as permitted by the court."

    B.  <u>Language in the Class Notice Order Restricting Class Counsel from Contacting Putative Class Members Following Receipt of an Opt-Out</u>

At the August 11, 2016 hearing, the court addressed the question whether exclusionary requests should be sent to both parties' attorneys or to class counsel only.  Defense counsel's concern was that, if notice went only to plaintiffs' counsel, class counsel might discourage class members from opting out of the litigation.  To prevent this situation, defendants sought restrictions on class counsel's ability to have unilateral contact with potential opt-outs.

The court determined that opt-out requests need be sent only to class counsel, as there was little precedent for notice being sent to defense counsel, and allowing this might create other problems.  (See Hrg. Tr. at 25:20-22.)  Further, the court declined to place any prior restraints on class counsel's ability to have contact with potential opt-outs in the absence of evidence of misconduct or some authority justifying such measures.  (*Id.* at 26-32.)

In responding to the pending motion, defendants renewed their argument on this issue. Once again, they seek to include in the Class Notice Order a narrow restriction on the ability of class counsel to communicate further with putative members once they have made the election to opt out of the class. To that end, defendants propose the inclusion of the following language in the last sentence of paragraph 5: "After receipt of any written request for exclusion from the Class from any putative Class member, neither Class Counsel nor Defendants' Counsel may contact or communicate with such person concerning the opt-out request, except with prior permission of the Court." (ECF No. 128-4.)

Defendants maintain that this prohibition is necessary because class counsel indicated the intention to contact opt-outs in order to discuss with them whether they should rescind their opt-out request. Defendants remain concerned that class counsel will solicit rescissions. They maintain that the case law does not support the right of class counsel to engage in communications that are designed to discourage opt-outs once the exclusion request is received. (*See* Defs.' Br. at 8-10, ECF No. 128 (citing *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Kan. 1981); *In re Katrina Canal Breach Consol. Litig.,* Civil Action No. 05-4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008) (citing ABA Ethics Opinion, formal Op. 07-445, at 3 (2007)); *Parks v. Eastwood Ins. Servs., Inc.,* 235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) ("In a class action certified under Rule 23 . . . absent class members are considered represented by class counsel unless they choose to 'opt out.'"); *Bobryk v. Durand Glass Mfg Co.,* No. 12-Civ-5360, 2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013) (holding that "until a rule 23 class is certified and the opt-out period expires, defense counsel is not completely barred from communicating with putative class members" under New Jersey's professional conduct rules).).

Plaintiffs counter that any prior restraint on their counsel's speech must be in accordance with *Gulf Oil Co. v. Bernard,* 452 U.S. 89 (1981). Class counsel contends it is his obligation to contact class members who indicate a desire to opt out in order to insure that their decision is "knowledgeably done," and not attributable to a misunderstanding of the class notice or other factor (such as a belief that they could not participate in the class litigation if they had released their property or if their title was infirm). Class counsel represents it is not his intention to discourage opt-outs, and he intends to make that clear in dealing with these class members; however, he believes that the complexities of the case warrant at least a "carefully neutral contact" to ensure that the opt-out is an informed one. (Pls.' Br. at 5, ECF No. 129.) Plaintiffs also assert that "because a class member may rescind his exclusion request at any time before adjudication, an exclusion request is actually inchoate until then, when it becomes final." (*Id.* at 6.)

Analysis

"Under Rule 23(d), a district court has a duty to 'safeguard class members from unauthorized [and] misleading communications from the parties and their counsel.'" *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 541 F. App'x 181, 186 (3d Cir. 2013) (quoting *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 310 (3d Cir. 2005)) (alteration in original). To that end, "a court may enter orders necessary to protect the integrity of the litigation." *Id.* at 186 (citing *Cmty. Bank*, 418 F.3d at 310).

The propriety of prior restraints on counsel's ability to communicate with absent class members continues to be governed by the standard set forth in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). There, the Supreme Court made clear that:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of

the need for a limitation and the potential interference with the rights of the parties.[ ] Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23.[ ] In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

452 U.S. at 101–02 (internal footnotes omitted) (citing *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir.1977)("[T]o the extent that the district court is empowered ... to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a specific record showing by the moving party of the particular abuses by which it is threatened.  Moreover, the district court must find that the showing provides a satisfactory basis for relief and that the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties.").

In *In re Community Bank of Northern Virginia,* 418 F.3d 277 (3d Cir. 2005), the Court of Appeals for the Third Circuit considered the propriety of a district court order that broadly prohibited various outside law firms from communicating with members of a settlement class unless the firms first submitted their proposed communications to the court for approval.  The court of appeals recognized that the district court had authority to manage the settlement process because misleading communications by counsel who solicited opt-outs could have a detrimental effect on the class notice procedure and the fair administration of justice.  418 F.3d at 311.  Nevertheless, the court of appeals vacated the district court's order because the district court had failed to abide by the tenets of *Gulf Oil.* Specifically,

the District Court never specified which portions of the solicitation letters were objectionable. . . . It conducted no evidentiary hearing, set no briefing schedule, and gave Appellants no practicable opportunity to be heard.[ ] The October 14, 2003 Order provided only that: "[f]or good cause, the Court invalidates and declares void all

solicited opt-outs by class members from Georgia, Missouri, Illinois, Maryland, Florida and Alabama." . . . . The District Court did not state what such "good cause" was.

481 F.3d at 311-12.

In this case, class counsel acknowledges his intent to initiate contact with absent members who indicate a desire to opt-out of the class. Previously, in their brief filed on June 6, 2016 (ECF No. 115), plaintiffs stated that "Class Counsel must be free to communicate with members who submit exclusions so as to be certain that they fully understand the ramifications of doing so," especially where there is a "high probability that the statute of limitations have run. . . ." (Pls.' Br. Sur Jt. Contested Mot. Approval of Plan of Class Action Notice, ECF No. 115, at 12.) In plaintiffs' most recent filing, class counsel reiterates the belief that class counsel is professionally obligated to contact absent class members in order to ensure that any opt-outs are "knowledgably done, and not attributable to some misunderstanding of the Notices or other factor (e.g., a belief that they could not participate if they had re-leased their property to another, or that their title was infirm, each of which will be a matter of defense to be ultimately decided by the Court)." (Pls.' Br. at 4-5, ECF No. 129.)

Defendants insist that case law does not support the right of class counsel to discourage opt-outs or encourage the rescission of exclusionary requests once they are received. Class counsel, however, expressly denies any intention to discourage opt-outs and represents that class counsel will "objectively make that clear" in dealing with individuals who request exclusion. (Pl.s' Br. at 5, ECF No. 129.) Class counsel maintains, nonetheless, that "the complexities of this case warrant at least a carefully neutral contact as could assure that the opting out-member has knowledgeably done so." (*Id.*) Class counsel previously explained this position at the August 11, 2016 hearing:

Your Honor, if this were an individual case and my one client was suing Shell and my client called me and said, you know, I am not sure I want to stay on this route, I think I want to discontinue the case; and I call him back and say, well, let me understand why because you may have a – the reason you have may not be a legitimate one legally, let me hear what you have to say; at that point I am still acting as their lawyer. That's all I am going to do.

To use the phrase, I am going to talk them out of it, that's not what lawyers do. Lawyers are supposed to give people the facts, make sure they understand the facts, and then honor their decision based on those facts. That's what I intend to do as class counsel.

(Hrg. Tr. at 27:13-28:1.)

Based upon the record as it presently stands, there is no evidence to suggest that class counsel has behaved, or will likely behave in a manner that would have a detrimental effect on the class notice procedure and the fair administration of justice. The parties' dispute about this point raises a question, however, about the proper role of class counsel during the opt-out period and, in particular, whether a true "attorney-client" relationship exists between class counsel and the class members who request exclusion. Notably, there is a split of authority concerning when the attorney-client relationship forms in a Rule 23(b)(3) class action. *See* 3 William B. Rubenstein, NEWBERG ON CLASS ACTIONS §9:8 (5th ed. 2013) (discussing split of authority and noting that "[d]uring a period in which class members are considering the possibility of opting out of the class, the attorney-client relationship may be slightly more amorphous because class members are deciding whether or not to remain in that very relationship.").

Some courts in Pennsylvania and elsewhere have suggested that an attorney-client relationship forms upon certification of the class, or even prior thereto, such that defense counsel is ethically precluded from contacting absent class members. *See, e.g., Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1206-07 (11th Cir. 1985) ("defense counsel had an ethical duty to refrain from discussing the litigation with members of the class as of the date of class

certification"); *Good v. W. Virginia-Am. Water Co*., No. CV 2:14-01374, 2016 WL 6404006, at *2 (S.D.W. Va. Oct. 26, 2016) ("Following certification of a class action, 'an attorney-client relationship arises between all members of the class and class counsel.'") (quoting *Fulco v. Continental Cablevision, Inc*., 789 F. Supp. 45, 47 (D. Mass. 1992)); *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629, 2010 WL 1879922, at *2 (E.D.N.Y. May 10, 2010) ("A number of courts have held that this relationship arises once the class has been certified and not only at the end of the opt-out phase."); *see also* Phila. Bar Assn. Prof. Guid. Comm., Ethics Op. 2009-1, 2009 WL 964148, at *2 (April 1, 2009) ("Pennsylvania courts have interpreted [Pennsylvania Rule of Professional Conduct] 4.2 as barring defense counsel in a state class action from contacting current or former employee class members regarding the subject matter of the lawsuit prior to a decision on certification (unless accomplished via deposition or other formal means of discovery with proper notice provided to the plaintiff's counsel).") (citing authority); *Gates v. Rohm & Haas Co*., No. CIV.A. 06-1743, 2006 WL 3420591, at *2 (E.D. Pa. Nov. 22, 2006) (prior to denial of certification, Rule 4.2 prohibited defense counsel from contacting or interviewing potential witnesses who are putative class members); *Braun v. Wal-Mart Stores, Inc*., 60 Pa. D. & C. 4th 13, 19 (Phila. Ct. Com. Pl. 2003) (court denied the defendant's request to interview and obtain affidavit testimony from putative class members, finding that "under Pennsylvania law putative class members are parties to the action until the court declines to certify the action" and they should therefore be "afforded the protections of Rule 4.2 of the Rules of Professional Conduct").

On the other hand, other courts, and the American Bar Association, have expressed the view that the attorney-client relationship is not formed until expiration of the opt-out period. *See, e.g., In re Wells Fargo Wage & Hour Emp't Practice Litig.*, 18 F. Supp. 3d 844, 851 (S.D.

Tex. 2014); *Velez v. Novartis Pharm. Corp*., No. 04 Civ. 9194, 2010 WL 339098, at *2

(S.D.N.Y. Jan. 26, 2010); *In re Katrina Canal Breaches Consol. Litig.,* Civil Action No. 05-

4182, 2008 WL 4401970, at *3 (E.D. La. Sept. 22, 2008)("'A client-lawyer relationship with a

potential member of the class does not begin until the class has been certified and the time for

opting out by a potential member of the class has expired.'")(quoting ABA Committee on Ethics

& Prof'l Responsibility, Formal Op. 07-445, at 3 (2007)); *The Kay Co., LLC v. Equitable Prod.*

*Co*., 246 F.R.D. 260 (S.D. W. Va. 2007) (citing ABA Formal Opinion 07-445); *see also* 2

McLaughlin on Class Actions §1:11 (13th ed. 2016) ("The majority rule is that... absent class

members are not represented parties prior to class certification and the expiration of any opt-out

period.").

In *Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005), the Court of

Appeals for the Third Circuit intimated that something less than a traditional "attorney-client

relationship" exists between class counsel and absent class members during the opt-out phase of

class litigation. In commenting on this point, the court of appeals took issue with the district

court's suggestion that outside law firms, in soliciting class members to opt out of a class-wide

settlement, had possibly violated ethical norms by engaging in "direct solicitations for

prospective clients whom they knew to be represented by another lawyer." *Id.* at 313. The court

of appeals explained:

> [C]ourts have recognized that class counsel do not possess a traditional attorney-client
> relationship with absent class members. *See Cobell v. Norton*, 212 F.R.D. 14, 17
> (D.D.C. 2002); *cf. Greenfield* [*v. Villager Indus. Inc*., 483 F.2d 824, 832 (3d Cir. 1973)]
> (providing that class counsel has "fiduciary" relationship with absent class members);
> *In re Shell Oil Refinery*, 152 F.R.D. 526, 528 (E.D. La.1989) (stating that "constructive"
> attorney-client relationship exists once opt-out period has closed). As stated in *In re*
> *McKesson HBOC, Inc. Sec. Litig*., 126 F.Supp.2d 1239 (N.D. Cal. 2000),
>
>> While lead counsel owes a generalized duty to unnamed class members, the
>> existence of such a fiduciary duty does not create an inviolate attorney-client

> relationship with each and every member of the putative class. Taken to an extreme, lead plaintiff's logic suggests that putative class members are forever walled off from any effort at solicitation, a proposition that seems unsupportable.
>
> *Id.* at 1245; *see also Morisky v. Pub. Serv. Elec. & Gas Co.*, 191 F.R.D. 419, 424 (D.N.J. 2000) (providing that class counsel could not assert attorney-client privilege over questionnaires completed by putative class members); 5 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 15:16 (4th ed. 2002) (stating that once opt-out period ends "[t]he attorneys for the class have assumed fiduciary obligations or constructive attorney-client status with respect to the class").

*In re Cmty. Bank of N. Va.*, 418 F.3d at 313 (footnote omitted).

Thus, *Community Bank of Northern Virginia* suggests that the Third Circuit Court of Appeals would recognize some kind of fiduciary relationship between class counsel and absent class members during the opt-out period, though perhaps something less than the traditional attorney-client relationship. *See Dondore v. NGK Metals Corp.*, 152 F.Supp. 2d 662, 666 (E.D. Pa. 2001) (holding that "putative class members stand at least in a fiduciary relationship with class counsel) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir.1995)). To the extent class counsel compares the absent class members to class counsel's private clients, class counsel may be overstating matters, but -- even so -- there is little authority for limiting contact between class counsel and absent class members during the opt-out stage of class litigation. The interests of class counsel and absent class members are generally aligned. *See* NEWBERG ON CLASS ACTIONS §9:8 ("[W]hile courts retain the authority to regulate class counsel's postcertification communications under the Supreme Court's *Gulf Oil* standards, they rarely have occasion to do so. Counsel's interests are generally aligned with those of the class in such a manner as to minimize the likelihood of malfeasance warranting a protective order[.]") (internal footnotes and citations omitted). As the court discussed in *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 272 (W.D. Ky. 1981), the

concern is that class counsel should not interfere with the notice process by discouraging opt-outs:

> During the time between the institution of a class action and the close of the opt-out period, the status of plaintiffs' counsel in relation to the class members cannot be stated with precision. While class counsel clearly have the duty to represent the interests of the absent class members, **it would also appear that contact initiated by class counsel prior to the close of the opt-out period would be unethical as direct solicitation of clients, if the purpose or predictable effect of the contact is to discourage a decision to opt out of the class.** Thus, the peculiar status of the class member during this period of time may place additional burdens on class counsel: For purposes of the obligation to avoid compromising the rights of the class members, class counsel must treat them as clients; for purposes of the obligation to avoid unethical solicitation, class counsel must treat the class members as non-clients.

508 F. Supp. 722 (emphasis added). Here, as noted, class counsel flatly denies any intention to discourage opt-outs.

In sum, the record before this court does not support the kind of prior restraint that defense counsel is seeking to impose in paragraph 5 of defendants' proposed Class Notice Order. Provided that class counsel merely shares information with absent members that is consistent with, or already set forth in, the Class Notice, there is no reason to believe that class members will be discouraged from opting out. Any concerns along these lines will be further abated if class counsel: (a) presents information to permit a knowledgeable opt-out, (b) presents information in a neutral fashion, including by duly noting those matters that are still debated and yet to be decided by the court, and (c) reminds absent class members of their right to consult their own attorney in determining whether to exclude themselves from the class. Class counsel will be instructed to comply with these restrictions, which are consistent with what class counsel stated would be communicated to an opting-out member. Based upon the foregoing considerations, the language set forth in the last sentence of defendants' paragraph 5 is not approved.

C.   Reference in the Class Notice to an "Exclusion Request Form"

At the August 11, 2016 motion hearing, the court addressed SWEPI's request that its proposed "exclusion request" form be included in the class notice mailing and that class members be permitted to opt-out by returning the form to both defense counsel and class counsel.  The court ruled that class members would be permitted to opt out by email as well as by regular mail, but it declined to permit the mailing of an "exclusion request" form to class members, because the process for opting out by email would be relatively simple.  (Mot. Hrg. Tr. at 25-26, ECF No. 131.)  The court further ruled that opt-out requests would only be sent to class counsel.

Following the court's ruling, the parties attempted, unsuccessfully, to negotiate a finalized version of the "long-form" (i.e., mailed) and "short-form" (i.e. published) class notices with language that would be satisfactory to both sides.  Plaintiffs' version of the mailed notice contains the following language concerning methods for opting out of the class action:

> There are three methods available:  (1) you may simply complete the Exclusion Request Form provided for your use at the website, **www.SWEPIclassaction.com;** (2) you may send a letter to class counsel which must contain your name, address, phone number, and stating that you want to be excluded from the *Walney v. SWEPI* class action, and be mailed by First Class Mail to Joseph E. Altomare, Class Counsel, 700 Rockwood Drive, Titusville, PA 16354; or (3) you may email a request containing all of the same information to Class Counsel at jaltomarlaw@gmail.com.  In each case, the request must be sent by [DATE].

(Notice ¶15; ECF No. 127-3.)  Plaintiffs' proposed short-form notice contains substantially similar language.  (*See* ECF No. 127-3 at 15.)

Defendants object to plaintiffs' reference to the "exclusion request" form based on the court's prior refusal to permit the mailing of such forms to class members.  Defendants assert that the parties had tentatively agreed on a form of notice that did not include the disputed language (*see* 8/17/16 email, ECF No. 128-1 at 15, ¶15), but class counsel added the "exclusion

form" reference back in when submitting his latest proposed iteration of the notice (*see* ECF No. 127-3 at 12, ¶15). Defendants especially object to putative class members accessing the exclusion form by downloading it from the class action website. Their concern is that this process: (a) requires an additional step for anyone desiring to opt out; (b) gives class counsel control over who obtains an "exclusion request" form; (c) permits class counsel to learn the identity of potential opt outs, thereby enabling him to "head off any exclusion request by directly contacting the putative class member in advance to try to convince the class member to not opt out. . . ," (Defs.' Br. at 4, ECF No. 128); and (d) requires class members to confront and bypass a cautionary webpage before downloading the exclusionary form. Defendants are concerned that the content of the cautionary page (ECF No. 129-1 at 2) is non-neutral and will likely discourage exclusions.

Plaintiffs respond that the disputed language was already included in their proposed forms of notice at the time of the August 11, 2016 motion hearing (*see* ECF No. 114-9 at 8 and ECF No. 123-1 at 7, ¶15); and, although the court declined to approve the use of a mailed exclusion form, it did not strike the language in plaintiffs' proposed notice allowing class members to download a form from the class website. To the extent defendants object to the cautionary web page (attached at ECF No. 129-1), plaintiffs insist the objection is baseless because the webpage simply mirrors language from the notices which has already been approved.

Analysis

Plaintiffs accurately note that, at the August 11, 2016 hearing, the court ruled that no exclusion form would be included in the mailing to class members, but it did not specifically prohibit class counsel from referring members to the class website to obtain such a form, because

the point was not raised.  Plaintiffs are also correct in observing that their present form of notice is similar to the one that was previously submitted to the court, insofar as both versions would allow class members to obtain an exclusion form from the class website.  Thus, technically, the inclusion of this option does not conflict with the court's rulings at the August 11, 2016 hearing.

Defendants' real objection concerns the procedure and content that class members confront when obtaining the form through the class website.  Defendants are concerned that the content of the cautionary web page (ECF No. 129-1, at 2) will discourage opt-outs.  At the August 11, 2016 hearing, the court ruled that class counsel should make the information on his website conform to the court's ruling and defense counsel should vigilantly monitor the website and bring any concerns to the court's attention.  (*See* Hrg. Tr. at 43:23-49:3.)  In general, the information on the cautionary web page does appear to conform to the contents of the class notice that the court has approved thus far.  Thus, plaintiffs' position on this point appears to be well taken.

Defendants also object to referring a putative class member to the class webpage because the webpage will provide class counsel a measure of control over the opt-out process that may allow class counsel to discourage opt-outs or encourage rescissions of opt-out requests.  This objection relates back to the previous issue concerning class counsel's intention to initiate contact with class members in order to ensure that any exclusion requests are undertaken in a knowledgeable fashion.  For the reasons previously discussed, that contact should not be problematic so long as class counsel's advice conforms to the contents of the class notice, is presented in a neutral fashion, reminds individuals of their right to consult their own attorney concerning the issue of opting out, and does not otherwise discourage exclusion from the class.  Plaintiffs' version of the mailed and published notice is approved with respect to the three

methods of opting out. Should defendants learn about conduct of class counsel that is inconsistent with the representations made by class counsel to this court, defendants should promptly bring that matter to this court's attention.

## III.     Conclusion

For the reasons set forth above, the parties' Joint Contested Motion for Approval of Plan of Class Action Notice will be granted with directions that the parties incorporate modifications to the class notice forms and class order as set forth in this opinion. Plaintiffs' Second Motion to Amend Class Definition will be granted, and plaintiffs' Motion to Expedite Entry of Orders will be denied as moot.

An appropriate order will be entered.


Dated: January 23, 2017


/s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge