# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS J. WALNEY and** | ) | |
| **RODNEY A. BEDOW, SR.,** | ) | |
| *individually and on behalf of all* | ) | |
| *others similarly situated,* | ) | CIVIL ACTION No. 13-102 Erie |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SWEPI LP** *and* **SHELL ENERGY** | ) | |
| **HOLDING GP, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

In this civil class action, Plaintiffs Thomas J. Walney ("Walney") and Rodney A. Bedow, Sr. ("Bedow") allege, on behalf of themselves and all similarly situated Pennsylvania leaseholders, that Defendants SWEPI LP and its general partner Shell Energy Holding GP, LLC (collectively, "SWEPI" or "Defendants") breached the terms of the class members' oil and gas leases by failing to pay bonus monies that were allegedly owed under the terms of the subject leases.[1] The case was originally assigned to the Honorable Sean J. McLaughlin. On August 28, 2013, the case was reassigned to the Honorable Joy Flowers Conti. ECF No. 21. After extensive pretrial proceedings, the case was transferred to the undersigned on September 17, 2018. ECF No. 221.

---

[1] The Court's subject matter jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. §1332.

Presently pending before the Court are the following motions: Plaintiffs' third and fourth motions to amend the class definition (ECF Nos. 183 and 211); Defendants' motion to decertify the class (ECF No. 196); Plaintiffs' second motion for summary judgment (ECF No. 213); and Defendants' motion to strike the Plaintiffs' Concise Statement of Material Facts (ECF No. 240). For the reasons that follow, Defendants' motion to decertify the class will be granted, and the remaining motions will be denied.

## I.    FACTUAL BACKGROUND

Because the parties are well-versed in the underlying facts, and because those facts have been recounted in prior opinions,[2] this Court perceives no need to repeat them at length herein. The relevant claims, set forth in Plaintiffs' Second Amended Complaint ("SAC"), sound in breach of contract. ECF No. 57. In September 2015, Judge Conti certified a class action relative to these claims. *See Walney v. SWEPI LP,* No. 1:13-cv-102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015). As currently defined, the class consists of:

> Every person who on or after March 14, 2009, signed a Pennsylvania oil and gas lease (labeled "PA Paid Up Lease Rev. 06.09.2011" or "PA Paid Up Lease Rev. 05.01.2011") and/or memorandum thereof in favor of and recorded by SWEPI, LP and received, in exchange therefore, a draft instrument in the amount of the corresponding lease bonus, which draft was neither paid nor replaced by a subsequently issued draft or check relating to the same (or substantially the same) property.

> Exclusions. Notwithstanding the foregoing, there shall be excluded from the Class any Person electing in writing or email to be excluded from the Class, and any Person whose individual claim for payment of the lease bonus has been sustained or denied by a verdict or dispositive order of a court in a separate lawsuit, irrespective of the outcome of any appeal.

---

[2] *See, e.g., Walney v. SWEPI LP,* 311 F. Supp. 3d 696 (W.D. Pa. 2018), *reconsideration denied,* No. CV 13-102, 2018 WL 4076919 (W.D. Pa. Aug. 27, 2018); *Walney v. SWEPI LP,* No. 1:13-cv-102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015).

ECF No. 133.

The Class's breach of contract claims are predicated on certain materially identical language set forth in SWEPI's form leases, memoranda of leases ("MOLs"), and drafts (collectively referred to as the "Transactional Documents"). Plaintiffs contend that, under the terms of their lease agreements, they were promised bonus monies that were never paid.

## II. PROCEDURAL BACKGROUND

In March 2013, Walney commenced this civil action in the Venango County Court of Common Pleas. ECF No. 1–1. The case was then removed to this Court on April 12, 2013. ECF No. 1.

On October 10, 2014, Walney filed his Second Amended Complaint ("SAC"), ECF No. 57, which remains the operative pleading. In his SAC, Walney added Bedow as a putative class representative and asserted claims predicated upon breach of express contract, breach of contract implied in fact, breach of contract implied in law (i.e. unjust enrichment), fraud, and promissory estoppel.

On September 14, 2015, Judge Conti certified a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) relative to the claims for breach of express contract and breach of contract implied in fact. *See Walney v. SWEPI LP,* No. 1:13-cv-102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015). At that point in time, Plaintiffs' position was that no individualized inquiries would be necessary concerning contract formation, breach, defenses, or injury, 2015 WL 5333521 at *11, because, "in each and every case at issue, SWEPI had an absolute and unconditional obligation to pay the bonus monies." *Id.* at *12. In certifying the class, Judge Conti observed that, "if the court adopts plaintiffs' proposed construction of the agreement, plaintiffs will be able to establish liability on a classwide basis by virtue of nonpayment alone.

Thus, plaintiffs' breach of contract theory can potentially be resolved by reference to, and interpretation of, common form documents."  2015 WL 5333541, at *13.

Following extensive pretrial proceedings, the parties filed cross-motions for summary judgment relative to the certified breach-of-contract claims.  ECF Nos. 140 and 165.  Construing the Transactional Documents in the context of the undisputed facts, Judge Conti determined, as a matter of law, that enforceable contracts existed between SWEPI and the various class members. 311 F. Supp. 3d at 725.  She went on to conclude, however, that genuinely disputed issues of material fact precluded a finding that SWEPI had breached its contractual obligations to all class members.

First, Judge Conti decided, as a matter of law, that, under the terms of the lease agreements, "SWEPI expressly reserved the right to refuse payment of the lease bonuses if it discovered title problems during the time periods established on the face of the Drafts."  311 F. Supp. 3d at 726.  Thus, "plaintiffs did not demonstrate that the payment condition set forth in the Draft [were] irrelevant as a matter of law."  *Id.* at 728.  Because SWEPI had produced evidence that title defects were "pervasive" among the drafts at issue, Judge Conti concluded that "SWEPI may have a potentially viable defense relative to a substantial number of the Drafts held by class members, the merits of which this court cannot presently adjudicate."  *Id.*  Second, Judge Conti found that SWEPI had adduced sufficient evidence to establish genuine issues of material fact relative to liability in some 17 transactions wherein it had allegedly surrendered lease agreements at the request of the lessors.  *Id.* at 729-30.  Third, Judge Conti found that liability issues existed relative to a number of class members who, it appeared, had never presented their drafts for payment.  *Id.* at 730.  Finally, Judge Conti found that genuine issues of fact existed relative to

certain claimants who appeared to fall outside of the class as it is currently defined and/or who had apparently already been paid their bonuses through replacement drafts. *Id.* at 730-31.

Based on these determinations, Judge Conti granted Plaintiffs' motion for summary judgment to the extent she found that the parties had entered into enforceable contracts; on the issues of contractual liability and damages, however, she denied Plaintiffs' motion. *Id.* at 730. Because SWEPI's motion for summary judgment was based entirely on its argument that the lease agreements were unenforceable, that motion was denied. *Id.* at 725.

In the wake of the Court's summary judgment ruling, the parties filed the currently pending motions. On May 21, 2018, Plaintiffs filed their Third Motion to Amend the Class Definition. ECF No. 183. Noting that the class is currently defined in terms of leaseholders whose MOLS were recorded by SWEPI, Plaintiffs now argue that recordation should be eliminated as a criterion for class membership because Judge Conti's ruling established that the lease agreements are enforceable irrespective of recordation.

On July 13, 2018, SWEPI filed the pending motion to decertify the class. ECF No. 196. SWEPI contends that, based on Judge Conti's summary judgment ruling, individualized issues now predominate over common issues of fact and law in this case, making continued certification under Rule 23(b)(3) untenable. SWEPI also asserts that the current case posture no longer supports a finding: (i) that the claims of the named representatives are typical of those of other class members, (ii) that Walney and Bedow can adequately represent the class, or (iii) that class action treatment is superior to other methods of fairly and efficiently adjudicating the case. *See* Fed. R. Civ. P. 23(a)(3)-(4) and (b)(3).

Plaintiffs responded to SWEPI's motion by filing a Second Motion for Summary Judgment on August 23, 2018, ECF No. 213, along with a Fourth Motion to Amend the Class

Definition. ECF No. 211. In the latter motion, Plaintiffs seek, in part, to exclude from the class those individual's "whose continuing inclusion would not permit the continuance of certified Class status, as determined by the Court upon judgment." ECF No. 211 at 3.

Plaintiffs' second motion for summary judgment admittedly "hinges on the Court's disposition of SWEPI's Motion for Decertification." ECF No. 212 at 2. It is premised on Plaintiffs' assertion that, even if this Court concludes that decertification is warranted, "there would nevertheless remain, upon appropriate amendment of the class definition, a residue cohort of class members" as to whom class-wide summary judgment is appropriate. *Id.* In response to Plaintiffs' second summary judgment motion, SWEPI has filed a motion to strike Plaintiffs' Concise Statement of Material Facts and Appendix, ECF No. 240, arguing that the challenged documents were filed belatedly and in violation of the applicable local rules.

On September 17, 2018, this civil class action was transferred to the undersigned. ECF No. 221. Upon review of the extensive filings in this case, it appears that all of the aforementioned motions are adequately joined and ripe for adjudication. The Court's analysis of these motions follows.

## III. DEFENDANTS' MOTION TO DECERTIFY THE CLASS

"'District Courts are required to reassess their class rulings as the case develops' to ensure that the class satisfies Rule 23."[3] *Johnson v. GEICO Cas. Co.*, 672 F. App'x 150, 157 (3d

---

[3] The question of which party has the burden on a motion to decertify a previously certified class is not settled. *See In re Pharmacy Benefit Managers Antitrust Litig.*, No. CV 03-4730, 2017 WL 275398, at *34 (E.D. Pa. Jan. 18, 2017), *reconsideration denied*, No. CV 03-4730, 2017 WL 1493029 (E.D. Pa. Apr. 26, 2017). Some courts place the burden upon the proponent of the decertification motion. *See id.* (citing *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000) (holding that "the Court may not disturb its prior findings absent 'some significant intervening event,'" and defining as significant the same events that would justify a motion for reconsideration, *i.e.*, "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"); *In re Atl. Fin. Fed. Securities*

Cir. 2016) (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998)). In order to warrant certification, a class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The class must also fit within one of the three categories of class actions set forth in Federal Rule of Civil Procedure 23(b). *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 302 (3d Cir. 2005). As discussed above, the breach of contract claims were previously certified under Rule 23(b)(3), which applies where: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The pertinent factors for consideration include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

---

*Litig.*, Civ. A. No. 89-645, 1992 WL 50072, *2 (E.D. Pa. Feb. 28, 1992) ("[W]hen seeking decertification of a class, the defendant bears a heavy burden to show that there exist clearly changed circumstances that make continued class action treatment improper."). "Other courts look to whether the plaintiff has carried the burden of showing a continued right to proceed as a class." *Id.* (citing *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (9th Cir. 2011) (holding that "as to the class-decertification issue," the party seeking certification continues to bear the burden of showing compliance with Rule 23); *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Securities Litig.*, 250 F.R.D. 137, 140 (S.D. N.Y. 2008) ("In order to decide whether or not to decertify this class, the Court must determine whether Plaintiff has carried his burden of demonstrating that each element of Rule 23 is met by a preponderance of the evidence."); *Walker v. Bankers Life & Cas. Co.*, Civ. A. No. 06-6906, 2008 WL 2883614, at *9 (N.D. Ill. July 28, 2008) (holding that "plaintiffs bear the burden of producing a record demonstrating the continued propriety of maintaining the class action"); *see also* Newberg on Class Actions § 7:39 (5th ed.) (collecting cases)). In this case, the Court reaches the same conclusions regarding decertification, irrespective of how the burden of proof is assigned.

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id*. The Court will address the challenged Rule 23 criteria seriatim.

A. Predominance

The "predominance" requirement of Rule 23(b)(3) incorporates the Rule's "commonality" requirement but is "far more demanding." *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (citation omitted). Like the "commonality" requirement, "'[p]redominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (citation omitted). However, the "predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Id.* (quoting *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)).

"Predominance" is met only if the district court is convinced that "the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018); *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S. Ct. 1036, 1045 (2016) (citation omitted). From a practical standpoint, this means that a district court must look first to the elements of the plaintiffs' underlying claims and then, "through the prism" of Rule 23, undertake a "rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove" those elements. *Reinig*, 912 F.3d at 128 (quoting Marcus, 687 F.3d at 600). "If proof of the essential elements of the [claim] requires individual treatment, then class certification is unsuitable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 259 F.3d 154, 172 (3d Cir. 2001) (citation omitted).

SWEPI argues that the Court's summary judgment rulings relative to title, surrender, and non-presentment of Drafts demonstrate that individual inquiry will be necessary in order to establish its liability.  In addition, although the Court's summary judgment ruling did not resolve the parties' dispute relative to the correct measure of damages and the applicability *vel non* of mitigation principles, SWEPI continues to argue that its paradigm for assessing damages is the correct one and would require individualized analysis relative to issues of fair market value and mitigation.

1. *Title Issues*

As Judge Conti observed in her summary judgment ruling, the parties' "most significant" disagreement concerned the extent to which defects in the class members' title would impact their ability to establish a contractual breach.  311 F. Supp. 3d at 726.  Relevantly, each draft provided a specified time period – usually 90 banking days after presentment -- "for title examination and for payment."  Judge Conti concluded that "the only reasonable interpretation" of that clause was "that SWEPI expressly reserved the right to refuse payment of the Lease bonuses if it discovered title problems during the time periods established on the face of the Drafts."  *Id.*  Thus, "the Drafts did not 'defer' payment solely for the sake of delay but with the obvious purpose of allowing SWEPI time to conduct a title examination."  *Id.* at 727. The "clear intent," the Court wrote, "was to allow SWEPI an opportunity to surrender the lease without any payment obligation where it found defects in the chain of title.  Construing the '90-day' clause in this manner is the most reasonable interpretation and wholly consistent with the purpose of the parties' agreement, which was to allow SWEPI the opportunity to explore and develop the leased premises during the five-year term of the Lease."  *Id.*  The Court found "no merit" in Plaintiffs' theory "that SWEPI somehow waived this condition by taking physical possession of the Leases

instead of 'escrowing' them." *Id.* "Also unfounded," in the Court's view, was "plaintiffs' theory

that SWEPI forfeited its right to contest payment on the ground of title deficiency by operation

of the 'merger' doctrine." *Id.* Consequently, "plaintiffs did not demonstrate that the payment

condition set forth in the Draft is irrelevant as a matter of law." *Id.* at 728. From an evidentiary

standpoint, Judge Conti found that

> SWEPI [had] produced evidence indicating that title defects of varying degrees
> were pervasive among the Drafts at issue in this litigation. The record shows that,
> in at least 120 instances, SWEPI cancelled Drafts based on outright failures of title
> or defects that SWEPI considered serious. . . . According to Ian Haney [a Senior
> Land Representative in SWEPI's Land Department], an additional 42 transactions
> were "cancelled per Land Department directive," which often was used as an
> indication of title-related problems. . . . Thus, SWEPI may have a potentially viable
> defense relative to a substantial number of the Drafts held by class members, the
> merits of which this court cannot presently adjudicate.

311 F. Supp. 3d at 728. Accordingly, the Court determined that entry of class-wide judgment in

favor of Plaintiffs was inappropriate.

In light of the Court's summary judgment ruling, SWEPI claims that issues pertaining to

title now predominate over issues that are common to the Class, requiring decertification. In

particular, SWEPI contends that any assessment of its liability will require individualized inquiry

as follows:

- in the 120 instances where SWEPI cancelled Drafts based on "outright failures of title or
  defects that SWEPI considered serious," 311 F. Supp. 3d at 728, SWEPI anticipates
  presenting proof at trial regarding the specific title-related problems concerning each
  property in this category.

- in the 42 instances where transactions were cancelled "per Land Department directive" –
  a phrase that Mr. Haney states "often was used as an indication of title-related problems,"
  311 F. Supp. 3d at 728, the parties would need to undertake an individualized inquiry into
  the specific circumstances of each transaction – i.e., why SWEPI declined payment in
  each instance and, if SWEPI's decision was based on a perceived title defect, what that
  alleged defect entailed. At trial, SWEPI would present individualized proof about the
  specific details of each transaction that SWEPI cancelled due to perceived title defects.

- With respect to the remaining lease transactions, SWEPI contends (based on Haney's Second Declaration) that title problems might account for its nonpayment in any particular instance. See ECF No. 150-1 at ¶¶24-28. According to SWEPI, identifying those class members in this group who were not paid because of title problems would involve a transaction-specific inquiry into the circumstances surrounding the nonpayment decision. In addition, SWEPI posits that its proof at trial would involve individualized evidence regarding the specific details of each transaction, as set forth in contemporaneous files and documents, testimony of SWEPI and affected class members, and possibly expert title examiners. *See* ECF No. 202 at 9-10 and ECF No. 150-1 at ¶¶24-28.

Plaintiffs' response is set forth in their omnibus brief, which addresses both their arguments in favor of a renewed motion for summary judgment and their arguments against decertification. ECF No. 212. With regard to the issue of title, Plaintiffs concede for present purposes that SWEPI has produced evidence of deficient title in some 115 transactions. See ECF No. 150-7. Nevertheless, Plaintiffs contend that only 24 of these 115 lease transactions are actually defensible. This theory is founded on the assumption that SWEPI could only reject a lease transaction on title-related grounds if it surrendered the lease prior to the draft's "due" date. Because Plaintiffs have calculated that only twenty-four leases were surrendered in a timely fashion, they argue that the lessors associated with these particular transactions should be excluded from the class and that judgment should be entered in the class's favor as to the remaining cases where SWEPI rejected a lease transaction on title-related grounds.

Plaintiffs' argument arises from Judge Conti's determination that the "clear intent" of the draft's payment clause was "to allow SWEPI an opportunity to surrender the lease without any payment obligation where it found defects in the chain of title." 311 F. Supp. 3d at 727. Plaintiffs interpret this statement as a holding, as a matter of law, that SWEPI could only avoid payment in situations where it proved: "(1) bad title *and* (2) that the lease in question was for that reason surrendered within the designated time frame prescribed in the corresponding draft." ECF No. 212 at 5-6.

In this Court's view, Plaintiffs read too much into the cited excerpt. Nowhere therein – or elsewhere in her opinion – did Judge Conti hold that the contractual terms required SWEPI to effectuate a formal surrender of the leases prior to the due dates on the drafts, nor will the undersigned read such a requirement into the contractual language. It is clear from context that the cited portion of Judge Conti's analysis was focused on Plaintiffs' (then prevailing) theory that SWEPI, by accepting the physical delivery of the leases rather than placing them in escrow, had waived its right to refuse payment based on title deficiencies. 311 F. Supp. 3d at 726-28. To the extent Judge Conti mentioned time constraints at all, it was only with respect to the requirement that SWEPI complete its title searches and then either fund or return the drafts within the time frames set forth in the drafts. *See, e.g.,* 311 F. Supp. 3d at 710 ("the Drafts can reasonably be viewed as supplying the contractual terms of payment, pursuant to which SWEPI promised to pay the bonus amounts by the end of the time period specified in the Draft, unless it determined within that time frame that the lessors lacked sufficiently clean title to the underlying gas and oil interests"); *id.* at 720 (concluding that "the Transactional Documents evidence a binding promise on the part of SWEPI to pay the Drafts in accordance with the time periods specified in each Draft, subject only to SWEPI's verification of clean title within that time frame"); *id.* at 722-23 ("The Draft evidenced SWEPI's promise to pay the Lease bonus at a date certain, absent the discovery of title problems. SWEPI's decisions relative to title analysis were limited only by the time restraints in the Draft and by its implied duty to exercise its discretion in good faith."); *id* at 723 ("Inasmuch as SWEPI made a promise to pay each Draft on a date certain, subject only to verification of clean title, its promise is valid consideration . . .").

It is also noteworthy that Judge Conti had before her the very same evidentiary record upon which Plaintiffs now rely in support of their argument that only 24 lease transactions are

defensible based on title-related grounds; nevertheless, she construed that same evidence as indicating that "title defects of varying degrees were pervasive among the Drafts at issue in this litigation," *id*. at 728, and therefore, "SWEPI may have a potentially viable defense relative to a substantial number of the Drafts held by class members. . . ." Id. The undersigned concurs. The record suggests that all of the 115 drafts that were ostensibly rejected based upon perceived title deficiencies were returned unpaid prior to expiration of the draft's "due date." *See* ECF No. 150-1 ¶29 ("The cancellation of the . . . drafts always occurred prior to the bank due date if the draft was in the SWEPI spreadsheets and was unpaid."). This would appear to satisfy Judge Conti's interpretation that the contractual payment terms allowed SWEPI to refuse payment if it did so for title-related reasons within the time frames set forth in the drafts. Consequently, this Court does not agree with Plaintiffs' position that, as a matter of law, SWEPI can only prevail on 24 of the 115 lease transactions where nonpayment was based upon perceived title problems.

With respect to the remainder of the leases – including the 42 transactions that were ostensibly cancelled "per Land Department directive," Plaintiffs contend that SWEPI cannot evade liability because there is insufficient evidence to show that these transactions were cancelled because of title defects. Plaintiffs maintain that title issues are in the nature of affirmative defenses as to which SWEPI bore the burden of adducing "direct" and "concrete" proof of a deficiency, as opposed to mere inference. See ECF No. 212 at 8. According to Plaintiffs, SWEPI has offered nothing more than a "questionable inference" that any of the 42 referenced transactions in this subgroup "*could*" involve title problems. *Id.* at 7.

This Court disagrees. To begin, the Court is not persuaded that all title-related issues constitute affirmative defenses, as opposed to attacks on an essential element of Plaintiffs' case. "To show a breach of contract, a party must establish: (1) the existence of a contract, including

its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."

*McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. Ct. 2013) (internal quotation marks and

citation omitted). As Judge Conti's summary judgment ruling made clear, SWEPI's contractual

duty to pay the bonuses was not absolute or unconditional, but was circumscribed to the extent

that SWEPI could refuse payment if it discovered title issues during the designated title

examination period. *See Walney,* 311 F. Supp. 3d at 723 ("[T]he drafts can reasonably be

viewed as supplying the contractual terms of payment, pursuant to which SWEPI promised to

pay the bonus amounts by the end of the time period specified in the Draft, unless it determined

within that time that the lessors lacked sufficiently clean title to the underlying gas and oil

interests."). "SWEPI's decisions relative to title analysis were limited both by the time restraints

in the Draft and by its implied duty to exercise its discretion in good faith." *Id.* at 723.

Accordingly, the title issues raised by SWEPI concern its payment obligations as defined by the

contract. Ultimately, it is the Plaintiffs' burden to demonstrate that SWEPI breached those

payment obligations; it is not SWEPI's burden to prove that it satisfied its payment obligations.

Consequently, the authority that Plaintiffs rely on relative to Rule 56 evidentiary burdens in the

context of affirmative defenses is inapposite insofar as SWEPI's title-related defenses are

concerned.

Nor does the Court agree, as a factual matter, that the present state of the record precludes

SWEPI from pursuing title-related defenses outside of the 115 transactions that Plaintiffs admit

involved title deficiencies. The "Second Declaration of Ian Haney" established that SWEPI

personnel entered on SWEPI's spreadsheets the "Reason Returned" for each unpaid draft, using

a short-hand summary explanation. ECF No. 150-1 at ¶23. The reasons set forth on the spread

sheets varied from one draft to another, and included notations such as "Already leased with

Shell," "Canceled per Land Department directive," "Canceled per SE Land," "HBP by XTO, lease is being surrendered," and others. *Id.* Southeast apparently maintained its own spreadsheets, as reflected by information set forth in Plaintiffs' exhibits, and those notations provide some additional details concerning the reasons that the various drafts were returned unpaid. *Id.* According to Haney, the short-hand "Return Reasons" set forth in SWEPI's spreadsheets "do not tell the whole story as to the particular circumstances for the return of any specific draft," *id.* ¶24, and "a detailed review of digital and hard copy files maintained by Southeast and SWEPI" would be needed in order "to piece together the details as to why any specific draft was returned for any specific lease for any specific landowner." *Id.* Approximately 42 transactions are listed in SWEPI's spreadsheets as "Cancelled per Land Department directive," or something similar. *Id.* ¶27. Although that phrase "could mean a number of different things in practice," it often connoted "some title-related issue that had become known during the course of the search." *Id.* This was evidently the case with draft No. PS 0153, which was issued to Richard and Patricia Ashbaugh, lessors who were ultimately determined not to have an interest in the gas rights they attempted to lease. *Id.* According to Haney, his review of the spreadsheets suggested that SWEPI had declined to pay bonus monies for title-related reasons in at least 120 of the lease transactions at issue; as to the remaining transactions, "SWEPI may have had title-related grounds for not paying the lease bonus and surrendering the leases," including the transactions involving nonpayment "per Land Department directive." *Id.* ¶28. Given the foregoing, Judge Conti had ample grounds to conclude that "SWEPI may have a potentially viable defense relative to a substantial number of the Drafts held by class members, the merits of which [it] cannot presently adjudicate." 310 F. Supp. 3d at 728.

Assuming *arguendo* that title defects are in the nature of an affirmative defense as to which SWEPI bears the burden of providing more "concrete" or "direct" proof, this merely proves SWEPI's argument that the "predominance" requirement is no longer satisfied. Such proof could only come upon a more particularized examination of individual lease transactions, which is contrary to the point of class certification. Thus far, the case has proceeded on the theory that specific title-related issues were irrelevant to Plaintiffs' ability to establish a class-wide contractual breach. Consequently, to the extent SWEPI has failed to adduce sufficient individualized proof relative to any transaction-specific title issues, the Court is not inclined to penalize SWEPI by entering summary judgment against it. Instead, the Court would exercise its discretion under Rule 56 to allow further development of the record in order to properly resolve the merits of these issues. *See* Fed. R. Civ. P. 56(d) and (e). Because SWEPI's "pervasive" title-related challenges to the class claims cannot be definitively resolved through evidence common to the class, the predominance requirement is no longer satisfied.

### 2. *Surrender Requests by Class Members*

In her summary judgment ruling, Judge Conti found that approximately 17 transactions involved situations where SWEPI surrendered the lease at the request of the lessor. 311 F. Supp. 3d at 728. Plaintiffs argued that the terms of the lease did not permit SWEPI to avoid its payment obligations for those transactions. Plaintiffs reasoned that, although Paragraph 10 of the lease agreement gave SWEPI the right of surrender, it did not give the lessors a similar right of surrender, nor did it provide grounds for a *rescission* of the lease *ab initio. Id.* According to Plaintiffs, if any class members requested a surrender, SWEPI's acquiescence in that request would merely result in a contemporaneous termination of the agreement, which would not negate SWEPI's previously accrued payment obligation. Plaintiffs contended that SWEPI's payment

obligation could only be discharged if: (a) there was consideration to support it and (b) the requesting class member expressly agreed to exonerate SWEPI in a signed writing that complied with the Statute of Frauds. *See id.* at 728-29.

The Court rejected Plaintiffs' position that SWEPI's voluntary surrender defense was irrelevant as a matter of law. Specifically, the Court determined that the defense of rescission involved factual issues, such as mutual assent and consideration, which could not be resolved at the summary judgment stage. 311 F. Supp. 3d at 729. The Court further opined that SWEPI's recordation of a lease surrender document satisfied the Statute of Frauds. *Id.* at 729. Having determined that SWEPI's voluntary surrender defense remained viable, the Court ruled that SWEPI had adduced sufficient evidence to establish a genuinely disputed issue relative to its liability as it pertained to the 17 transactions in question.

In their omnibus brief, Plaintiffs renew their assertion that the class members associated with these 17 transactions are entitled, as a matter of law, to recover their full bonuses. In support of their renewed request for summary judgment, Plaintiffs offer new arguments, claiming that, if these arguments had been raised previously, "the Court would actually have come to conclude that no fact inquiry was necessary. . . ." ECF No. 212 at 10. In essence, Plaintiffs are asking this Court to reconsider Judge Conti's previous ruling. Although "'[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, . . . as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Because this Court perceives no such extraordinary circumstances here, it declines to revisit Judge Conti's ruling.

Given the foregoing, SWEPI contends, and this Court agrees, that the 17 transactions in question present additional factual issues that are not common to the class as a whole and that will require further development on a claims-specific basis. SWEPI posits that the necessary factual inquiry will require investigation of the specific circumstances surrounding each request for surrender, a deposition of each class member to probe his or her intent in requesting surrender, and discovery and examination of the communications between SWEPI and the relevant class members. As SWEPI correctly points out, this necessity for individualized inquiry further demonstrates a lack of predominant, common issues.

### 3. *Non-Presentment of Drafts*

In the prior summary judgment proceedings, SWEPI adduced evidence suggesting that approximately 18 drafts listed on the Class Claims List had never been presented to its bank (Amegy Bank N.A.) for payment or, at least an issue of fact existed as to whether the drafts were presented. Judge Conti agreed with SWEPI that Plaintiffs could not obtain summary judgment on behalf of class members holding these drafts because presentment of the drafts to SWEPI's bank was a condition of payment. *See* 311 F. Supp. 3d at 730 (noting that "for class members who never presented their Drafts, the designated period for payment never began to run, and no payment due date could ever have arrived").

In so ruling, Judge Conti rejected Plaintiffs' argument that, as a matter of law, class members' presentment of these drafts had either been excused or was unnecessary. Specifically, she did not agree that presentment had been excused pursuant to Article 3 of the UCC, inasmuch as that authority applied where the maker of the instrument had previously cancelled the instrument, and such circumstances had not been shown to exist relative to the 18 drafts in

question. 311 F. Supp. 3d at 730. Judge Conti found that genuine issues of fact existed as to whether SWEPI could be liable for its failure to honor the subject drafts. *Id.*

In their omnibus brief, Plaintiff appear to concede that the 18 drafts identified by SWEPI as having never been presented were, indeed, never presented to Amegy. *See* ECF No. 234 at 17 ("Plaintiffs have therefore excluded from their calculation of damages the drafts shaded in Orange which admittedly were not presented."). Nevertheless, Plaintiffs assert that "17 of those 18 unpresented drafts were actually superseded by subsequent drafts issued to the same claimants and each is shown to have actually been received by SWEPI's bank . . . ." ECF No. 214 at 15. The implication of Plaintiffs' argument is that they are entitled to summary judgment relative to the 17 alleged "replacement" drafts.

The Court's examination of the record demonstrates otherwise. Based on the declaration of Justin Tschoepe, ECF No. 223-1, SWEPI has produced evidence that, of the 17 drafts that Plaintiffs claim were replacements for the unpresented instruments:

- 8 were returned for a title-related reason;

- 5 are original drafts that were replaced by the drafts that were never presented (i.e., Plaintiffs have it backwards);

- 3 were cancelled per Land Department directive; and

- 1 pertains to a claim that Defendants never identified as being subject to the non-presentment defense.[1]

ECF No. 225 at 24 (footnoted omitted) (citing ECF No. 223-1 at ¶7). SWEPI correctly notes that genuinely disputed issues of fact exist concerning the Plaintiffs' ability to establish liability for nonpayment of these instruments.

In their reply brief, Plaintiffs suggest that judgment is appropriate at least with respect to the five transactions where it now appears that the affected class member: presented his or her

original draft to Amegy, subsequently received a replacement draft from SWEPI, and then failed to present the replacement draft for payment. According to Plaintiffs, "[SWEPI] has adduced no evidence whatsoever that any of the affected class members acquiesced to that unilateral replacement. There being no such evidence, this affirmative defense fails . . . ." ECF No. 234 at 17. Plaintiffs' argument is unavailing because SWEPI *did* previously provide evidence, through the declarations of Mr. Haney and an independent land contractor's representative, that replacement drafts were generally issued only "if the landowner agreed." ECF No. 150-1 at ¶18; ECF No. 150-2 at ¶13. And, even if this evidence is insufficient by itself to support a genuine issue of fact, entry of summary judgment would not be appropriate at this juncture because more specific proof of the class members' acquiescence would, by its very nature, require individualized discovery – a fact that supports SWEPI's request for decertification.

### 4. Impossibility

SWEPI also intends to assert the defense of impossibility as to a certain group of class members for whom title searches could not be completed due to congestion at the Venango County Courthouse. Because she did not need to reach this issue in her summary judgment ruling, Judge Conti did not expressly rule on the viability of this defense. Plaintiffs, moreover, have not specifically addressed this defense in their motion for summary judgment. As far as this Court can tell, Plaintiffs have only addressed the issue indirectly to the extent they argued that only 24 transactions are potentially defensible as the result of title-related issues. By implication, Plaintiffs contest SWEPI's ability to defend these transactions; however, Plaintiffs did not set forth any independent basis to support entry of summary judgment relative to the drafts that SWEPI intends to defend on the basis that performance was rendered impossible.

Inasmuch as this Court has already rejected the Plaintiffs' attempt to cabin SWEPI's title-related defenses to the 24 transactions, SWEPI's "impossibility" defense remains potentially viable.

To prevail on this defense at trial, SWEPI intends to prove: (1) the specific class members that are subject to the defense; and (2) the specific circumstances surrounding the title examinations for their properties. As SWEPI points out, its "impossibility" defense affects only a portion of the class. Thus, this issue, like SWEPI's other defenses, counsels against a finding that issues common to the class predominate over individual issues.

### 5. Conclusions Regarding the "Predominance" Requirement

The substantial evidentiary and procedural record in this case establishes that SWEPI has potentially viable defenses related to title issues, requests by certain class members that their leases be surrendered, the failure of certain class members to present their drafts for payment, and impossibility of performance. Consequently, Plaintiffs cannot establish class-wide liability based on the fact of nonpayment alone, as they originally asserted when the class was certified. Because most of the common issues identified at the time of class certification have now been resolved, it cannot be said that common issues still predominate over individual issues at this stage of the proceedings.[4] *See Witt v. Chesapeake Exploration, L.L.C.,* 276 F.R.D. 458, 466, 469 (E.D. Tex. 2011) (denying class certification as to claims involving alleged breach of oil and gas leases, in part, because the defendant lessor did not make "one unilateral decision to breach the leases of every member of the class" and "[i]nvestigating and litigating each of [the defendant's]

---

[4] SWEPI has raised additional arguments in support of its assertion that the "predominance" requirement is no longer satisfied; however, the Court need not reach those issues in order to render its ruling on decertification.

potential defenses to the breach of contract claim as to each individual class member would require numerous mini-trials, defeating predominance").

Moreover, the Court agrees with SWEPI that the Court cannot feasibly maintain predominance by simply excluding from the class those who lacked good title or who are subject to SWEPI's other defenses. As SWEPI points out, doing so would run afoul of "an essential prerequisite of a class action," – i.e., "that the class must be currently and readily ascertainable based on objective criteria." *Carrera v. Bayer Corp.* 727 F.3d 300, 306 (3d Cir. 2013). Based on all of the foregoing considerations, SWEPI has shown that the "predominance" requirement is no longer satisfied vis-a-vis the class claims.

B. Typicality

One of the threshold requirements for class certification is that the plaintiff's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). This requirement is intended to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Marcus v. MVW of N. Am., LLC,* 687 F.3d 583, 598 (3d Cir. 2012) (internal quotation marks and citation omitted). In assessing whether the typicality requirement is satisfied, courts consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class. *Id.* "This comparative analysis addresses three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those

of the class." *Id.* (citation omitted).  *See Walney v. SWEPI L*P, No. CIV.A. 13-102, 2015 WL

5333541, at *22–23 (W.D. Pa. Sept. 14, 2015).

In her opinion granting class certification, Judge Conti found that the typicality had been

satisfied "[a]t least at this point in the proceedings" because of the nature of the Plaintiffs' legal

theory.  Critically, she observed:

> plaintiffs are asserting their breach of contract claims under the theory that, in all
> cases, the terms of the subject leases unconditionally obligated SWEPI to pay the
> bonus monies, irrespective of title issues, requests for surrender by the landowner,
> or other reasons cited by SWEPI for nonpayment. Plaintiffs argue that this
> unconditional obligation arose from the unambiguous terms of the contract, viewed
> in the context of SWEPI's common act of retaining possession of the leases and
> recording the MOLs prior to the completion of their title searches. Thus, the claims
> of Walney and Bedow are the same as those of the class in terms of both the legal
> theory being advanced and the factual circumstances underlying their theory.

2015 WL 5333541, at *23.  The Court found that the interests of Walney and Bedow were

sufficiently aligned with the interests of putative class members, in part because it was not clear

"that issues such as title defect will result in different litigation strategies for the class members

or differing outcomes relative to liability." *Id.* at *24.

Given Judge Conti's subsequent rejection, at the summary judgment stage, of Plaintiffs'

legal theory that SWEPI was unconditionally obligated to pay bonus monies irrespective of title

issues or requests for surrender by landowners, the foundational girding of her "typicality"

analysis no longer applies and, in this Court's view, the criterion is no longer satisfied.  In light

of the present legal landscape of this litigation, the legal theories and factual circumstances of

Walney's or Bedow's breach of contract claims might not necessarily be the same as those of all

other absent class members.  Because "SWEPI's decisions relative to title analysis were limited

both by the time restraints in the Draft and by its implied duty to exercise its discretion in good

faith," 311 F. Supp. 3d at 723, various class members will undoubtedly frame SWEPI's

contractual breach in different ways, because it is now established that nonpayment alone will

not suffice. One claimant might allege, for example, that SWEPI breached its duties by predicating nonpayment on a change in market prices or upon its inability to complete a timely title search. Another class member might allege that SWEPI breached its duties by predicating nonpayment on a purported title defect that did not in fact exist or that was asserted in bad faith.

Typicality is also lacking insofar as Walney and Bedow appear to be in the group of class members as to whom SWEPI will argue that its performance was rendered impossible -- a defense which is "both inapplicable to many members of the class and likely to become a major focus of the litigation" in their cases. *Marcus*, 687 F.3d at 598. *See* ECF No. 57 ¶24 and ECF No. 57-5. And, contrary to the conditions that existed when this case was originally certified, it is now likely, if not inevitable, that issues such as title defect will result in different litigation strategies for different class members. As SWEPI points out, a class member who possessed clean title to his or her mineral interest might have no incentive to dispute SWEPI's claim that another class member lacked good title, and a class member who had grounds to contest his own title determination might have no incentive to challenge a determination by SWEPI that a different class member had, e.g., previously leased his oil and gas rights to another company. Thus, this Court cannot say that the interests and incentives of the named representatives are sufficiently aligned with those of the other class members. For these reasons, the Court finds that the "typicality" requirement of Rule 23(a)(3) is no longer met.

C.     Adequacy

Rule 23(a) also requires, as a prerequisite to class certification, that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The rule "tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately

represented in negotiations." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.2d 410, 428 (3d Cir. 2016). *See Kelly v. Bus. Info. Grp., Inc.*, No. CV 15-6668, 2019 WL 414915, at *7 (E.D. Pa. Feb. 1, 2019) (adequate representation involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class) (citations omitted).

At the time of certifying the class, Judge Conti found that "plaintiffs' interests as to [the breach of contract] claims are presently aligned with those of the class because the liability and damages theories for plaintiffs' breach of contract claims are the same as those being asserted on behalf of the class." 2015 WL 5333541, at *24. She added that,

> At this point in the litigation, no intra-class conflicts exist beyond the mere potentiality that individualized issues may prove to be both relevant and predominant with respect to the breach of contract claims; however, this is a determination that will be fleshed out in more detail at the merits stage of the proceedings. At that time, the feasibility of class certification or sub-class certification can be revisited, if appropriate.

*Id*.

As SWEPI correctly observes, the "potentiality" that individualized issues may prove both relevant and predominant has now come to pass. In light of the Court's rejection of Plaintiffs' liability theory that contractual breach can be established in all cases by nonpayment alone, the interests of Walney and Bedow are no longer adequately aligned with the interests of all other class members. As discussed, at least 115 class leases may be defensible on the basis that the lessors lacked clean title to the property interests they were purporting to convey. In other lease transactions, SWEPI will pursue a defense of impossibility. Still other transactions may be defensible based on the lessor's request for a voluntary surrender or for failure of the lessor to present the subject Draft to SWEPI's bank. Thus, it is likely that the various class

members will have differing litigation strategies such that the named representatives' interests may well be antagonistic to those of other class members.

As an example, SWEPI notes the unwillingness of class counsel to have Walney and Bedow present at the parties' most recent mediation session. Counsels' concern was that the presence of the class representatives would undermine his ability to negotiate a class settlement. ECF No. 202-1 at 4. Specifically, class counsel expressed concern that one of the class representatives might indicate a "personal preference" to accept an offer that might be "unreasonable" from the point of view of the class. *Id.* Notably, Plaintiffs have made no effort to rebut SWEPI's argument in this regard. The Court agrees that, on balance, the record no longer supports a finding that Walney and Bedow are adequate representatives for the class as it is presently constituted.

D.    <u>Superiority</u>

Rule 23(b)(3) requires that a class action be a superior means of fairly and efficiently adjudicating a controversy as compared to other available methods. Relevant considerations for this criterion include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks a district court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 409 (3d Cir. 2015) (internal quotation marks and citation omitted).

Although Judge Conti previously found that this criterion was satisfied, she allowed that "[t]o the extent that subsequent developments in this litigation produce or reveal a lack of uniformity among the class members in terms of their respective litigation strategies, the court can revisit the appropriateness of continued classwide adjudication at that time." 2015 WL 5333541, at *26. In light of the present legal and factual landscape of this litigation, this Court cannot say that continued class certification is a superior means of fairly and efficiently adjudicating the present controversy. As a result of Judge Conti's summary judgment ruling, it is evident that genuinely disputed factual issues relative to SWEPI's liability are pervasive among the class's claims. Consequently, a class action trial of this litigation would likely devolve into a series of mini-adjudications concerning the reasons and circumstances of nonpayment in any particular transaction. In addition, the Court is persuaded that SWEPI should be permitted to obtain discovery on a more individualized basis relative to its defense of many class members' claims. Also, as demonstrated by class counsel's reluctance to have Bedow and Walney present at mediation, it appears those individuals may have an interest in individually controlling the prosecution of their own cases. The same is likely true of other class members, who may well have differing litigation strategies based on the applicability, in any given case, of SWEPI's various defenses.

Allowing class members to pursue their claims on an individualized basis therefore seems to be the most, and perhaps only, feasible alternative. At this phase of the litigation, many (if not most) of the overriding predominant legal issues have been resolved. Given the amount of common discovery that has occurred thus far, individual lawsuits will likely proceed to a merits-dispositive phase relatively quickly. To the extent additional discovery is needed, it can be tailored narrowly to the issues that are relevant to any particular plaintiff's claim. Any future

dispositive motions can similarly be tailored to the particular facts of the transaction at issue. The larger number of case filings, while not ideal, might encourage settlement, since those individuals with larger claims will presumably remain incentivized to pursue their lawsuits, while SWEPI – facing litigation on multiple fronts -- will have an incentive to contain its own defense costs. To the extent particular cases require trials, those proceedings will be more manageable on an individualized basis. Based upon all these considerations, this Court does not consider continued class treatment to be a superior method of fairly and efficiently adjudicating the parties' disputes.

E. <u>Conclusions Regarding Decertification</u>

As the foregoing discussion demonstrates, many of the factors necessary for continued class certification under Rule 23(b)(3) are presently lacking. In addition, Plaintiffs' attempts to pare down the class to a residual "cohort" of individuals as to whom judgment can be entered are unavailing. In their Fourth Motion to Amend Class Definition, Plaintiffs propose redefining the class to "exclude[] . . . those Person[s] whose continuing inclusion would not permit the continuance of certified Class status, as determined by the Court upon judgment." ECF No. 211. As SWEPI urges and Plaintiffs appear to acknowledge, this would essentially create an impermissible "failsafe" class. The U.S. Court of Appeals for the Third Circuit has not held that failsafe classes are viable under Rule 23, and this Court declines to reach such a holding here. Plaintiffs have not proposed any other class definition that would satisfy the requirement that the remaining members can be "currently and readily ascertainable based on objective criteria." *Carrera v. Bayer Corp*., 727 F. 3d 300, 306 (3d Cir. 2013). Finally, the Court is not in a position to certify subclasses in light of the present state of the record, nor have Plaintiffs requested that it do so. For all of these reasons, SWEPI's motion to decertify the class will be granted.

## IV.    PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiffs argue in their omnibus brief that class-wide summary judgment in their favor is warranted because, "even if the Court determines that any one or more of SWEPI's decertification grounds has merit, there would nevertheless remain, upon appropriate amendment of the class definition a residue cohort of class members who would [not] be affected by such grounds."  ECF No. 212 at 2.  To that end, Plaintiffs have presented a panoply of six different scenarios under which, depending on the disposition of certain issues, they claim an entitlement to damages in principle amounts ranging from $17,668,447.41 (if all of SWEPI's contentions are credited) to $34,423,856.18 (if none of SWEPI's arguments are credited).  ECF No. 216 at 2.  In their most recent filing, Plaintiffs argue that the Court should make a principal award of $32,751,115.86, excluding from that computation certain drafts that Plaintiffs agree should not be part of their request for relief.  ECF No. 234 at 31; ECF No. 234-2.

Construing the evidence of record in the light most favorable to SWEPI, the Court concludes that entry of the requested summary judgment award is inappropriate.  At present, the Court perceives genuinely disputed issues of fact concerning the number of lessors who will ultimately be affected by title deficiencies.  There are also unresolved issues concerning the number of claims that might be affected by SWEPI's impossibility defense.  In addition, the Court finds that there are genuine disputes concerning the number and amounts of drafts as to

which SWEPI will be able to defend its failure to pay on non-presentment grounds. Alternatively, to the extent that any of these defenses depend upon further individualized discovery in order to ascertain whether genuinely disputed factual issues exist, the Court exercises its discretion under Rule 56(d) and (e) to allow further development of the record in this regard. Plaintiffs' request for summary judgment will therefore be denied without prejudice to be reasserted at a later point in time by any individual lessor herein, as additional proceedings may warrant.

## V.      CONCLUSION

Based upon the foregoing reasons, SWEPI's motion to decertify the class will be granted. Plaintiffs' Third and Fourth Motions to Amend the Class Definition will be denied. Plaintiffs' Second Motion for Summary Judgment will be denied without prejudice. Finally, SWEPI's motion to strike the Plaintiffs' Concise Statement of Material Facts will be denied as moot.

An appropriate order follows.


_Susan Paradise Baxter_
Susan Paradise Baxter
United States District Judge