# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. WALNEY and<br>RODNEY A. BEDOW, SR., | ) | |
| | ) | |
| | ) | CIVIL ACTION No. 13-102 Erie |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SWEPI LP and SHELL ENERGY<br>HOLDING GP, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

## I.   INTRODUCTION

In this case, Plaintiffs Thomas J. Walney and Rodney A. Bedow, Sr. ("Plaintiffs") allege that Defendants SWEPI LP and Shell Energy Holding GP, LLC (collectively, "SWEPI") breached the terms of their respective oil and gas leases by failing to pay bonus monies that were allegedly owed under the subject leases.[1]  The case was previously certified as a class action by then-presiding United States District Judge Joy Flowers Conti.  *See* ECF No. 89, 90, *reported at Walney v. SWEPI LP*, No. Civ. A. 13-102, 2015 WL 5333541, at *1 (W.D. Pa. Sept. 14, 2015). On April 20, 2018, Judge Conti issued a memorandum opinion and order granting partial summary judgment in favor of the class and concluding, as a matter of law, that the lease agreements constituted enforceable contracts.  *See* ECF No. 177, 178, *reported at Walney v. SWEPI LP*, 311 F. Supp. 3d 696 (W.D. Pa. 2018), *reconsideration denied* at ECF Nos. 217, 218, *reported at* 2018 WL 4076919, at *1 (W.D. Pa. Aug. 27, 2018).

---

[1] The Court's subject matter jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. §1332.

The case was subsequently transferred to the undersigned on September 17, 2018.  *See* ECF No. 221.  On March 31, 2019, this Court granted SWEPI's motion to decertify the class on the grounds that the prerequisites for class certification under Federal Rule of Civil Procedure 23(b)(3) were no longer satisfied.  *See* ECF Nos. 249, 250*, reported as Walney v. SWEPI LP,* No. CV 13-102, 2019 WL 1436938 (W.D. Pa. Mar. 31, 2019).  Plaintiffs thereafter continued the prosecution of their individual claims, and certain discovery disputes ensued.

As a means of narrowing the issues in dispute, this Court directed the parties to file motions for summary judgment concerning disputed matters that involve purely legal issues.  As a result, the Court now has pending before it SWEPI's motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment.  ECF Nos. 302, 304.

The factual background and procedural history have been laid out in depth in the prior decisions cited above and will not be repeated here.  Instead, the Court will refer to background facts, procedural history, or other matters of record only insofar as it is relevant to the motions now pending before this Court.

## II. STANDARD OF REVIEW

Summary judgment will be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Where there are no disputed material facts and the question presented is one of pure law, undisputed evidence must still be construed in the light most favorable to the non-movant.  *Rea v. Cincinnati Ins. Co.*, No. CIV.A. 3:13-21, 2014 WL 4198059, at *4 (W.D. Pa. Aug. 22, 2014).

## III. DISCUSSION

### Are the Parties Precluded from Re-litigating Issues Previously Decided in Judge Conti's April 20, 2018 Summary Judgment Ruling?

Initially, the parties disagree as to what force and effect, if any, should be given to Judge Conti's rulings, as set forth in her April 20, 2018 Memorandum Opinion and Order, which were rendered prior to decertification of the class. In particular, the parties disagree about whether they are presently bound by Judge Conti's previous determination that the lease agreements are enforceable contracts.

Plaintiffs contend that SWEPI is estopped from re-litigating this issue (and any others previously adjudicated) pursuant to the "law of the case" doctrine and/or principles of "issue preclusion." SWEPI counters that the "law of the case" doctrine has no applicability because Judge Conti's determination as to the existence of enforceable contracts was clearly erroneous and should be vacated. SWEPI further disputes that the prerequisites for issue preclusion are satisfied in this case.

### A. Issue Preclusion (aka "Collateral Estoppel")

Initially, we consider Plaintiffs' assertion that issue preclusion -- otherwise known as "collateral estoppel" -- bars reconsideration of the prior summary judgment ruling. Although the parties disagree about whether federal or state law governs this issue, the distinction is ultimately immaterial. Under either federal or state principles, SWEPI is not estopped from relitigating the issue of whether the lease agreements are enforceable contracts.

Under federal law, issue preclusion applies where:

1) The issue sought to be precluded is the same as that involved in the prior action;

2) The issue was actually litigated;

3) The issue was actually determined in a valid and final judgment; and

3

4) The determination was essential to the prior judgment.

*Burlington Northern R.R. Co. v. Hyundai Merchant Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995); *see also United States v. Sharpe*, No. CV 20-2490, 2021 WL 4453623, at *3 (E.D. Pa. Sept. 29, 2021). In this case, the Judge Conti's April 20, 2018 ruling was interlocutory and not a final, appealable judgment. *See, e.g., Williams v. Wells Fargo Home Mortg., Inc.*, No. 2:06-CV-03681-LDD, 2010 WL 11534319, at *7 (E.D. Pa. Jan. 11, 2010), *aff'd*, 410 F. App'x 495 (3d Cir. 2011) ("Partial summary judgment is not a final order and is not entitled to *res judicata* in other litigation."); *see also Gallant v. Telebrands Corp.*, 35 F. Supp. 2d 378, 393 (D.N.J. 1998) (citing authority). Consequently, SWEPI is not collaterally estopped from challenging the prior determination that the lease agreements constitute enforceable contracts.

Pennsylvania estoppel principles are similar to their federal counterpart. The Pennsylvania Supreme Court has recently stated that "[c]ollateral estoppel will only apply where: the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action." *See In re Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021) (*citing Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)). "In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment." *Id.* (citing *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50-51 (Pa. 2005)). Once again, because Judge Conti's April 20, 2018 ruling was not a "final judgment on the merits," SWEPI is not collaterally estopped under Pennsylvania law from challenging the enforceability of the lease agreements.

Plaintiffs contend, however, that Pennsylvania law draws a materially nuanced distinction between *claim* preclusion (or res judicata) on one hand, and *issue* preclusion (i.e., collateral estoppel) on the other, where finality is concerned. Citing *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996), Plaintiffs posit that Pennsylvania follows the collateral estoppel rule articulated in Section 13 of Restatement (Second) of Judgments, *to wit*:

> The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action *that is determined to be sufficiently firm to be accorded conclusive effect.*

Restatement (Second) of Judgments § 13 (1982) (emphasis added). Plaintiffs point to Judge Conti's August 27, 2018 decision denying SWEPI's motion for reconsideration as evidence that she intended her April 20, 2018 partial summary judgment ruling to be a "firm" decision within the meaning of Restatement §13.

Plaintiffs' position is at odds, however, with the commentary to the Restatement rule. Comment *g* to Section 13 indicates that "finality" depends on "whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision." Thus, the fact "that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." *Id.*

Here, Judge Conti's ruling on the enforceability of the leases was certainly supported with a reasoned opinion (two separate opinions, in fact). However, the opinion was never subject to appeal, much less actually reviewed on appeal, because no final ruling was issued on either liability or damages. *Cf.* Fed. R. Civ. P. 54(b) (allowing the district court to direct entry of a final judgment "as to one or more, but fewer than all, *claims* or *parties*"). Accordingly, Judge

Conti's April 20, 2018 ruling could have been (and still can be) revised at any time before the entry of a judgment that adjudicates all the claims and all the parties' rights and liabilities in the *Walney* action. *See* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties rights and liabilities."). The fact that the *Walney* Court's April 20, 2018 decision was never subject to appellate review supports the conclusion that it was not sufficiently "firm" for purposes of applying issue preclusion.

  B.  *Law of the Case*

Alternatively, Plaintiffs contend that any issues decided in Judge Conti's April 20, 2018 ruling, including the enforceability of the lease agreements, is now the law of the case and must not be disturbed. SWEPI counters that the April 20, 2018 ruling should be vacated because Judge Conti clearly erred, both in her articulation of the "trade usage" rule of contract construction and in assuming that a duty of good faith and fair dealing is implied in every Pennsylvania contract.

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure,

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Thus, "'[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly

erroneous and would make a manifest injustice.'" *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439 (3d Cir. 2009) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). At bottom, the "law of the case" doctrine remains a prudential rule that "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messenger v. Anderson*, 225 U.S. 436, 444 (1912).

Here, SWEPI argues that the April 20, 2018 ruling cannot be considered the law of the case because it was clearly erroneous, both with respect to Judge Conti's articulation of the rule concerning trade custom and usage and with respect to her conclusion that a duty of good faith and fair dealing is implied in every contract under Pennsylvania law.

As to the latter point, this Court need not presently opine on whether a duty of good faith and fair dealing is implied in all Pennsylvania contracts. Judge Conti addressed that issue as part of a broader prediction that, for purposes of this case, the Pennsylvania Supreme Court would not necessarily adhere to the reasoning expressed by the Texas Court of Appeals in *Spellman v. Lyons Petroleum Inc.*, 709 S.W.2d 295 (Texas App. 1986), and *Arabella Petroleum Co., LLC v. J.H. Baldwin*, No. 04-11-00370-CV, 2012 WL 2450803 (Tex. App. June 27, 2012) -- two decisions which SWEPI cited as persuasive authority for purposes of interpreting the exculpatory language in the Plaintiffs' draft instruments. As Judge Conti observed, both *Spellman* and *Arabella* involved contractual provisions which vested complete discretion in the oil and gas company relative to acceptance of the lease and payment of the corresponding draft; therefore, the courts in those cases appropriately determined, as a matter of law, that the exculpatory clauses in the drafts evidenced a lack of contractual intent. *See Walney*, 311 F. Supp. 3d at 716. Whether or not an implied duty of good faith and fair dealing was "critical" to Judge Conti's decision as SWEPI suggests, *see id.*, is of no moment, because this Court

independently concludes that the two Texas cases are not dispositive here.  Since both cases involved distinguishable facts, neither one persuasively compels the conclusion that the "no liability" clause in the Plaintiffs' drafts negates all contractual obligations on the part of SWEPI.

As for the issue of trade custom and usage, the Court is not persuaded that Judge Conti clearly erred in her articulation of that particular rule of contract interpretation.  Nevertheless, the Court ultimately agrees with SWEPI that the law of the case should not preclude re-litigation of that issue as it relates to the enforceability of the lease agreements at issue here. Evidence as to trade usage is "always relevant and admissible in construing commercial contracts" under Pennsylvania law, "even where no ambiguity otherwise exists." *Sunbeam Corp. v. Liberty Mut. Ins. Co.*, 781 A.2d 1189, 1193 (Pa. 2001).  Thus, SWEPI's argument concerning the trade usage of drafts is important to a fair resolution of the claims in this case. Trade usage is also, however, a fact-intensive inquiry.  *See Walney*, 311 F. Supp. 3d at 718 (observing that the "[trade usage] rule of construction has application only where both parties to the contract are familiar with the particular trade usage by virtue of being engaged in a particular industry, or otherwise have reason to know of it") (citing authority); *see also Trustees of Univ. of Pennsylvania v. St. Jude Children's Research. Hosp.*, 982 F. Supp. 2d 518, 537 (E.D. Pa. 2013) ("Whether a trade usage exists is a question of fact for the jury[.]") (citing authority); Restatement (Second) of Contracts § 222(2) ("The existence and scope of a usage of trade are to be determined as questions of fact."); *id.* §222(3) ("Unless otherwise agreed, a usage of trade in the vocation or trade in which the parties are engaged or a usage of trade of which they know or have reason to know gives meaning to or supplements or qualifies their agreement."). In particular, determining whether a trade usage can be inferred in the context of

a particular transaction is an inherently factual inquiry requiring individualized proof.  In

addressing this issue during the certified class proceeding, Judge Conti necessarily analyzed the

record through the lens of class-wide proof.  But given the importance of the issue, and the

inherently individualized fact inquiry it entails, the Court finds that decertification constitutes

sufficient grounds to revisit that issue now.  *See United States v. Jerry*, 487 F.2d 600, 605 (3d

Cir. 1973) ("[S]o long as the district court has jurisdiction over the case, it possesses inherent

power over interlocutory orders, and can reconsider them when it is consonant with justice to

do so.").

      Accordingly, the April 20, 2018 ruling will not be afforded preclusive effect as it relates

to industry usage.  And, because industry usage may potentially impact the enforceability of

SWEPI's payment obligation in this case, it follows that no preclusive effect can be given to

Judge Conti's determination that enforceable contracts exist.

### Is SWEPI Entitled to Conduct Individualized Discovery on Custom and Usage?

      Based upon the foregoing analysis, the Court will permit all parties to conduct

discovery on industry/trade custom and usage, insofar as such custom or usage may inform the

Court's understanding of the parties' contractual intent.  This includes individualized

discovery.

### What is the Proper Measure of damages?

      The parties also disagree about the proper measure of damages, should enforceable

contracts be found to exist.  At bottom, their competing paradigms depend on whether the lease

agreements are more properly viewed as executory or non-executory contracts. Arguing that

the contracts, if any, are executory, SWEPI contends that the appropriate measure of damages

is set forth in *Bafile v. Borough of Muncy*, 588 A.2d 462 (Pa. 1991). There, the Pennsylvania

Supreme Court reviewed the "three remedies available to a seller when a buyer defaults under

an agreement of sale for real property," to wit:

> First, a seller can sue a defaulting party for damages, measured as the contract price minus the fair market value at the time of the breach less any payments received. Second, a seller may request specific performance of the contract, if a seller can demonstrate that without this equitable remedy the seller will not be in the same position as if the buyer had not breached the contract. Finally, a seller may commence a contract action for the purchase price of the real property and other damages, conditioned upon the transfer of the property.

*Id.* at 463-64.

For purposes of this case, SWEPI notes that the second alternative is inapplicable,

leaving Plaintiffs with only the first or third alternatives. Under the first alternative, SWEPI

notes, the seller (i.e., Plaintiffs) must be prepared to demonstrate the fair market value of their

mineral interest at the time of alleged breach. Under the third approach, SWEPI argues, the

sellers (i.e. Plaintiffs) must be willing and able to transfer their mineral interests to SWEPI.

Plaintiffs, on the other hand, insist that this case involves non-executory contracts

because the transactions essentially "closed" when the executed lease forms were delivered to

SWEPI in exchange for the draft instruments. Consistent with this view, Plaintiffs contend that

the proper measure of damages is the "sum certain" amount of the drafts, plus prejudgment

interest. Plaintiffs reason that their situation is legally akin to that an action for enforcement of

a check or note given in consideration for the conveyance of real estate at closing.

Plaintiffs further contend that, even if the putative contracts here were executory, *Bafile*

affords them the option of recovering the purchase price set forth in the drafts, which eliminates

any need for determining the market value of the property interest at issue. And while this third

*Bafile* option is conditioned on the transfer of the property to the buyer, Plaintiffs say that

requirement does not apply here, because they already transferred the property to SWEPI by executing and delivering the leases, which SWEPI then cancelled.

Upon review of the parties' respective arguments, the Court finds that SWEPI's position is the more tenable one, in that the transactions at issue here are more in the nature of executory agreements for the sale of property rather than completed transfers. Key here is the provision in the draft instruments which provided SWEPI a specified period of time for title search and cancellation of the agreement if title was found to be defective. Here, the transactions could not be considered "closed," and title could not pass, until SWEPI accepted title by either: (i) funding the drafts or (ii) failing to rescind the agreement within the time period allowed in the drafts. To the extent Plaintiffs can prove that SWEPI's timely rescission of a lease constituted a contractual breach, Plaintiffs' remedies are those enumerated in the *Bafile* decision.[2] Because the second *Bafile* remedy is not applicable here, that would leave Plaintiffs the option of: (i) seeking damages measured as the difference between the contract price (i.e., draft amount) minus the fair market value of the property interest at the time of breach (less any payments received) or (ii) obtaining the contract price along with any other damages and transferring the mineral interest to SWEPI. If Plaintiffs' mineral interests are currently under lease with other oil and gas producers, only the first remedy is available. *See Maisano v. Avery*, 204 A.3d 515, 522 & n.4 (Pa. Super. Ct. 2019) ("[W]e long have recognized

---

[2] Plaintiffs' position may have potential merit if they can show that SWEPI failed to cancel the drafts in a timely manner; that is, if the period for rescission expired without SWEPI having affirmatively manifested its cancellation of the lease agreement, then it might be said that the transaction had effectively "closed." But even then, the leases appear to contemplate that SWEPI would only be liable for amounts proportionate to the lessors' interest. *See* ECF No. 57-1 (sample form "Paid-Up Oil and Gas Lease") at ¶5 **LESSOR'S INTEREST** ("If Lessor owns an interest in the leased premises less than the entire and undivided estate herein leased, then all payments herein provided shall be paid by Lessee only in the proportion to which Lessor's interest bears to the whole and undivided estate."). The Court is presently unable to determine whether either Walney or Bedow is in this situation.

in this Commonwealth that an assumpsit action at law for the purchase price,' as provided for in the Agreement here, is 'the functional equivalent of specific performance.'") (quoting *Trachtenburg v. Sibarco Stations, Inc.*, 384 A.2d 1209, 1211-12 (1978)).

<u>Do Plaintiffs Have a Duty to Mitigate Their Damages</u>?

Next, the parties dispute whether the Plaintiffs have a duty to mitigate their losses.  On this point, Plaintiffs maintain there is no duty to mitigate a sum certain.  To that end, they cite *TruServ Corp. v. Morgan's Tool & Supply Co.*, 39 A.3d 253, 262 (Pa. 2012), wherein the Pennsylvania Supreme Court stated that "an injured party ... is not obligated to mitigate damages when both it and the liable party have an equal opportunity to reduce damages."  *Id.* at 262 (internal quotation marks and citation omitted; ellipsis in the original).  Plaintiffs also quote *TruServ* for the proposition that "in situations involving a breach of contract for the payment of a sum certain, the breaching party could always reduce its obligation for losses incurred by the non-breaching party simply by paying the amount due and performing the contract.  *Id.* at 263.  *See* ECF No. 66 at 7-8 (also citing *Somerset Cmty. Hosp. v. Allan B. Mitchell & Assocs.*, 685 A.2d 141, 150 (1996); *Fiat Motors of North America, Inc. v. Mellon Bank, N.A.*, 827 F.2d 924, 930 (3rd Cir.1987); and *Toyota Indus. Trucks U.S.A., Inc. v. Citizens Nat'l Bank*, 611 F.2d 465, 474 (3d Cir. 1979)).

SWEPI maintains that the Plaintiffs have a duty to mitigate damages.  Again, they cite to *Bafile*, where the court stated: "[a]s a general proposition of contract law, a party who suffers a loss due to a breach of contract has a duty to make a reasonable effort to mitigate his losses. 588 A.2d at 464 (citing authority).  "To hold otherwise would in many instances penalize the breaching party beyond the assessment of actual damages while rewarding the injured party for his failure to act."  *Id.*

The Court agrees that mitigation is the operable rule and, therefore, should Plaintiffs establish a breach of enforceable lease agreements, any damage award will need to take into account their general duty to mitigate losses.  Plaintiffs' argument to the contrary is premised on their assumption that the appropriate measure of damages is the sum certain amount in the drafts, which -- they claim -- are not capable of being mitigated.  But this Court has determined that sum certain damages do not apply where SWEPI's alleged breach is predicated on its timely rejection of the lease agreements.  The authorities cited by Plaintiffs do not persuade this Court otherwise.

Nonetheless, while Plaintiffs may have a general duty to mitigate their damages, Pennsylvania law treats mitigation as an affirmative defense on which the breaching party bears the burden of proof.  *See Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 258 (3d Cir. 2008). To prove a failure to mitigate, a breaching defendant must show "(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced." *Prusky*, 532 F.3d at 258-59 (internal quotation marks and citation omitted); *see also Polit v. Grey Flannel Auctions, Inc.*, No. 3:19-CV-00590, 2021 WL 4844053, at *12 (M.D. Pa. Oct. 18, 2021).  Consequently, to the extent mitigation of damages becomes an issue in this case, SWEPI will bear the burden of proof on that issue.

<u>Do Plaintiffs Have the Burden of Proving Good Title in Order to</u>
<u>Have an Actionable Breach of Contract Claim and/or Does SWEPI</u>
<u>Have the Burden of Proof on that Issue?</u>

We next address a disagreement concerning which party bears the burden of proof relative to title.  Plaintiffs argue that Judge Conti's April 20, 2018 decision settles the matter and places the burden of proving title deficiencies on SWEPI.  Relatedly, Plaintiffs argue that

they do not have any burden of demonstrating good title in the first instance as a condition of establishing a breach of the lease agreement.  Plaintiffs contend that, absent an express covenant of seisin in the agreements, they need not establish good title as an element of their case.  Plaintiffs maintain that the lease agreements contain only a general warranty of title, by which they promised only to defend their title to the property interest if it were ever challenged by third parties.  Plaintiffs assert that SWEPI cannot now assert any breach of that warranty, because such breach can only ever arise if SWEPI is subjected to actual or constructive eviction, which is now an impossibility given SWEPI's surrender of the subject leases.  Thus, according to Plaintiffs, SWEPI has the burden of proving defective title, as a conditional right to avoid payment of the draft amounts.

SWEPI, of course, disagrees.  First, it denies that Judge Conti's April 20, 2018 ruling has any preclusive effect relative to the burden of proving title issues.  Second, SWEPI maintains that good title was a condition precedent to Plaintiff's right to receive payment of the draft amounts and, therefore, Plaintiffs must establish good title as a condition to demonstrating breach of the lease agreements.  As support for its position, SWEPI points to language from this Court's decertification opinion as well as decisions issued in *Masciantonio v. SWEPI LP*, 195 F. Supp. 3d 667 (M.D. Pa. 2016) and *Cardinale v. R.E. Gas Dev. LLC*, 74 A.3d 136 (Pa. Super. Ct. 2013).

Relevant to the parties' dispute is Judge Conti's discussion of the "title examination" language in the Drafts:

> [E]ach Draft expressly gave SWEPI a specified number of banking days "for title examination and for payment." . . .  When the Transactional Documents are construed collectively, the Drafts can reasonably be viewed as supplying the contractual terms of payment, pursuant to which SWEPI promised to pay the bonus amounts by the end of the time period specified in the Draft, unless it determined within that time that the lessors lacked sufficiently clean title to the underlying gas

and oil interests. Viewed in this light, the Transactional Documents provided valid
consideration to each class member in the form of a conditional promise of future
payment.

*Walney*, 311 F. Supp. 3d 696, 710 (W.D. Pa. 2018) (citation omitted). Elsewhere, Judge Conti

reiterated her view that "the contract as a whole is most logically interpreted as incorporating a

promise by SWEPI of a future payment, albeit one conditioned on verification of clean title."

*Id*. at 714; *see also id*. at 720 (concluding that "the Transactional Documents evidence a

binding promise on the part of SWEPI to pay the Drafts in accordance with the time period

specified in each Draft, subject only to SWEPI's verification of clean title within that time

frame"); *id*. at 722-23 ("The Draft evidenced SWEPI's promise to pay the Lease bonus at a date

certain, absent the discovery of title problems.").

At present, the Court cannot definitively opine on the meaning and effect of the draft

language allowing a specified number of banking days "for title examination and for payment."

On one hand, the Court is inclined to interpret that language as Judge Conti did, evidencing a

promise by SWEPI "to pay the bonus amounts by the end of the time period specified in the

Draft, unless it determined within that time that the lessors lacked sufficiently clean title to the

underlying gas and oil interests." 311 F. Supp. 3d at 710. Viewed in this light, the "title

examination" language appears to place the burden on SWEPI to affirmatively demonstrate a

title defect as a condition that excused its performance obligation (i.e., payment of the bonus

consideration). On the other hand, SWEPI has argued that any such conditional promise was

rendered illusory by virtue of the "no liability" clause in the draft. It remains to be seen

whether SWEPI's proffered interpretation of the "no liability" language must be accepted as a

matter of law as the result of an industry usage. To the extent SWEPI does not prevail on the

industry usage issue, the contractual language suggests that SWEPI has the burden to identify

title problems as a basis for refusing payment.

SWEPI insists that, if the leases are enforceable, then the "title examination" clause must be viewed as establishing a condition precedent to its performance obligation -- namely, verification of good title.  Citing Pennsylvania cases, SWEPI notes the general rules that: "[i]f a condition precedent to a performance obligation under a contract is not satisfied, . . . the obligations of the non-performing party are discharged," and "[t]he party alleging the breach of contract bears the burden of proof that the condition was satisfied." ECF No. 303 at 22 (citing *Francis Gerard Janson P.C. v. Frost*, 618 A.2d 1003, 1006 (Pa. Super. Ct. 1993), *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1007-08 (3d Cir. 1980) (applying Pennsylvania law); and *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 620-21 (E.D. Pa. 2008)).  SWEPI also cites this Court's prior statement in the decertification opinion that it was "not persuaded that all title-related issues constitute affirmative defenses, as opposed to attacks on an essential element of Plaintiffs' case." *See* 2019 WL 1436938, at *7.  As further support for its position, SWEPI cites *Masciantonio v. SWEPI LP*, 195 F. Supp. 3d 667 (M.D. Pa. 2016), and *Cardinale v. R.E. Gas Dev. LLC*, 74 A.3d 136, 141 (Pa. Super. Ct. 2013), two cases involving oil and gas leases with conditional payment language.

As SWEPI recognizes, "this Court did not issue a direct holding resolving the dispute" over which party bears the ultimate burden of proof on title issues.  ECF No. 303 at 21.  Having now considered the parties' arguments on the matter (and assuming again that the leases are enforceable contracts), the Court is of the view that SWEPI bears the burden of demonstrating that its refusal to fund the subject drafts was predicated on a finding of unclean title or, failing that, was otherwise excused.

The Court's rejection of SWEPI's position boils down to a nuanced, but material, distinction in its interpretation of the title examination clause.  SWEPI interprets the clause to

mean that it would not fund the drafts unless it could first verify, within the agreed upon number of banking days, that the lessor had clean title to the property interest being conveyed. A finding of clean title, in other words, was a condition *precedent* to any payment obligation. This is the view that the Court took in *Masciantonio*, when reviewing materially identical language. Although the *Masciantonio* opinion is persuasive on many issues, this Court declines to follow *Masciantonio* for the proposition SWEPI now advocates because this Court interprets the title examination clause differently: in this Court's view, SWEPI promised to fund the drafts upon expiration of the specified number of banking days, *unless* it rescinded the lease in the interim because of unclean title.[3]  In other words, clean title was not a condition *precedent* to SWEPI's payment obligation; rather a finding of *unclean* title was a condition *subsequent* to contract formation that excused SWEPI's payment obligation.  To the extent SWEPI seeks to be excused from payment based on title defects, it has the burden of proving same.  *See Sentry Paint Techs., Inc. v. Topth, Inc.*, No. CIV.A.08-1064, 2008 WL 4787579, at *8 (E.D. Pa. Oct. 31, 2008) ("Under Pennsylvania law, the "existence of the condition subsequent which can be invoked as justifying the termination of a contract must be proved by the terminating party.") (citing *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 16 A.2d 444, 448 (Pa.1940)).

---

[3] The court's decision in *Cardinale v. R.E. Gas Development LLC* does not compel a different conclusion. There, the lessor gas company issued an order of payment with the following language: "Lessee[, i.e., R.E. Gas,] shall, **subject to its inspection, approval of the surface, geology and title**, make payment to Lessor[, i.e., Appellants] as indicated herein by check within 60 days of Lessee's receipt of this Order For Payment and the executed Oil and Gas Lease associated herewith." 74 A.3d at 141 (alterations and emphasis in the original).  The court's central holding was that the language in the order of payment set forth conditions of performance, rather than conditions pertaining to the existence of a contract; thus, the lease agreements were enforceable and the contractual language did not give the lessee gas company an unfettered right to terminate the lease.  The *Cardinale* Court did not address which party bore the burden of proof on title issues. *Id.* at 141-42.

17

For their part, Plaintiffs need not prove good title in the first instance, assuming their leases are otherwise enforceable.  Rather, to establish a prima facie case of breach, Plaintiffs must show that they had enforceable contracts, that SWEPI breached the agreements by failing to fund the drafts in accordance with its conditional promise, and that damages resulted from the breach.  *Walney*, 311 F. Supp. 3d at 706 ("To succeed on a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) the breach of a duty required by the contract; and (3) damages from the breach.") (citing authority).  Consistent with this view, Plaintiffs can establish a *prima facie* breach if SWEPI rejected their leases in an untimely manner or if SWEPI rejected the leases for reasons unrelated to a title defect.  Plaintiffs need not prove clean title in the first instance because SWEPI assumed the duty of payment, subject only to its right to refuse performance within a specified period of time based on unclean title.[4]

SWEPI contends that, in conveying the subject property interests, the Plaintiffs covenanted good title.[5]  But assuming that is true, any subsequently revealed title defects may be viewed as a failure of consideration on the part of the Plaintiff lessors.  Under Pennsylvania law, failure of consideration is an affirmative defense as to which the defendant has the burden of proof.  *See In re Estate of Beeruk*, 241 A.2d 755, 758 (Pa. 1968) ("[I]t is well settled that failure of consideration is an affirmative defense and the burden of proof rests with the party asserting this defense."); *In re Est. of Zimmerman*, No. 2315 EDA 2013, 2014 WL 10917601, at *13 (Pa. Super. Ct. June 17, 2014) (observing that "failure of consideration is an affirmative

---

[4] Plaintiffs acknowledge that, if SWEPI attempts to assert defective title as to any of the subject leases, they would then be obligated to produce evidence to the contrary.  *See* ECF No. 305 at 9 ("It is only if SWEPI purports to prove bad title that the plaintiff would have to produce evidence to disprove that this is so.").

[5] Plaintiffs insist that they conveyed only a general warranty, which obligated them only to defend title in the event that SWEPI faced actual or constructive eviction by a third party.  The Court need not resolve this dispute presently.

defense, and the burden of proof is placed upon the party averring the defense"). Therefore, if the lease agreements are found to be enforceable contracts, SWEPI will bear the burden of establishing title defects.

SWEPI also contends that the Pennsylvania Supreme Court "long has imposed upon the seller of property the obligation of establishing that the title conveyed is marketable." ECF No. 70 at 26 (citing authority). But gas and oil leases are in the nature of contracts and, notwithstanding general principles of property law, the rights and obligations of the parties are ultimately determined by the terms of the lease agreements. *See In re Powell*, No. 3:13-CV-00035, 2015 WL 6964549, at *6 (M.D. Pa. Nov. 10, 2015) (discussing *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012), and concluding that the court's opinion simply discusses certain general principles [of property law] while also noting that the written terms of the lease are paramount. By their nature as general principles, the former need not apply if other circumstances, such as contrary language in the lease, render them inapplicable."). As discussed herein, the subject leases imposed on SWEPI the duty to fund the drafts, absent issues involving unclean title. And, in any event, the cases cited by SWEPI pertain to actions where the Plaintiff sought specific performance; in such an instance, the Pennsylvania Supreme Court has held that the vendor must be "able to offer a marketable title which is beyond reasonable certainty." *Swain v. Fidelity Ins., Trust & Safe Deposit Co.*, 54 Pa. 455, 458 (Pa. 1867). It cannot be determined at this point whether the Plaintiffs would seek the remedy of specific performance.

In sum, it remains to be seen whether the "title examination" clause in the drafts constitutes an enforceable (albeit conditional) promise that would demonstrate the existence of

valid consideration on the part of SWEPI.  But assuming Plaintiffs prevail on the enforceability issue, the title examination clause places the burden of proof on SWEPI relative to title defects.

<u>Is Surrender of the Lease of Record Necessary to Establish
SWEPI's Rejection of the Lease Agreement?</u>

Finally, we address a disagreement about what constituted a rescission by SWEPI of the subject leases. Plaintiffs contend that, as a matter of law, rescission could only be effectuated upon SWEPI's recordation of its surrender of the subject leases.  SWEPI maintains that rescission was effective as of the date that it cancelled the subject drafts.

Assuming, *arguendo*, that the lease agreements are enforceable contracts, the Court finds that either method proposed by the parties would effectuate a valid rescission, if timely performed.  As noted, the drafts allowed a certain number of banking days "for title examination and payment." This language implies that the drafts would be funded at the expiration of the specified time period, unless SWEPI determined, prior to that point, that a lessor's title was not sufficiently clean.  Cancellation of a draft during the specified title examination period would constitute sufficient evidence of SWEPI's intent to rescind the lease agreement, as would a surrender of the lease or a recordation of surrender.

Plaintiffs submit that a mere cancellation of the draft could not, alone, constitute an effective rescission; otherwise, they argue, SWEPI would be permitted to continue subsistence of the lease of record to their detriment.  In other words, SWEPI -- while refusing payment -- could theoretically allow a lease to remain of record, thereby barring a leaseholder's attempt to lease to another who may be willing to cure the title defect found by SWEPI.

Plaintiffs' point is well-taken but is more relevant, in this Court's view, to the issue of mitigation than to rescission.  To the extent SWEPI may have failed to promptly surrender a lease (or failed to record same) after cancelling a leaseholder's draft, this might conceivably have

impacted the leaseholder's ability to mitigate his or her damages by entering into an alternative

leasing arrangement. Any such delay may therefore be relevant insofar as SWEPI must

ultimately prove the leaseholder's failure to mitigate damages.[6]

## IV. CONCLUSION

For the reasons set forth herein, the April 20, 2018 Memorandum Opinion and Order

issued by Judge Conti will have no binding effect relative to industry custom or usage of the "no

liability" language in the drafts. Because resolution of that issue requires individualized

evidence concerning Plaintiffs' knowledge of the alleged usage, the Court will allow discovery

on that issue. Reopening the issue of industry custom and usage necessarily means that the

existence of enforceable contracts is also unsettled in this case. Accordingly, the April 20, 2018

Memorandum Opinion and Order granting partial summary judgment and the August 27, 2018

Memorandum Opinion and Order denying reconsideration will be vacated insofar s they relate to

the enforceability of the individual leases.

To the extent enforceable contracts can be established, and to the extent Plaintiffs can

establish a contractual breach based upon SWEPI's rescission of the lease during the time period

set forth on the bank drafts, Plaintiffs' available remedies are those set forth in *Bafile v. Borough

of Muncy*, 588 A.2d 462, 464 (Pa. 1991). The Court recognizes a duty on the part of the

Plaintiffs to mitigate their losses; however, SWEPI would bear the ultimate burden of proof on

that issue.

---

[6] SWEPI argues that formal surrender of the lease was not necessary in order for Plaintiffs to
release their oil and gas interests because Plaintiffs could have recorded an affidavit of forfeiture
or similar document following SWEPI's cancellation of the drafts or after the deadline for
payment had passed. ECF No. 307 at 26-27. Plaintiffs insist that such unilateral assertions by a
lessor "would not pass muster by any competent title company." ECF No. 316 at 10. These
competing assertions involve factual inquiries that may be relevant to the issue of damages
mitigation at some point, but they cannot, and need not, be resolved at this juncture.

The Court further holds that good title is not a condition that Plaintiffs must prove in the first instance as part of their *prima facie* breach of contract case; rather, defective title is an issue on which SWEPI bears the burden of proof.

Finally, the Court concludes that a cancellation of the draft instruments is a sufficient manifestation of SWEPI's intent to rescind the lease agreements.

With respect to SWEPI's outstanding Motion to Resolve Discovery Dispute Related to Plaintiffs' Discovery Responses, the Court will direct the parties to confer concerning their prior disagreements in light of the ruling rendered herein.  SWEPI's motion will be denied without prejudice to be reasserted to the extent disagreements remain in light of the conclusions reached herein.

SUSAN PARADISE BAXTER
United States District Judge